## GEER v. BOARD OF COM'RS OF OURAY COUNTY.

## BOARD OF COM'RS OF OURAY COUNTY v. GEER.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1899.)

Nos. 1,193, 1,194.

1. MUNICIPAL BONDS—CONSTITUTIONALITY OF STATUTE—REFUNDING BONDS.

Const. Colo. art. 11, § 6, as amended in 1888, which prohibits the creation of indebtedness by counties without a favorable vote of the electors, does not apply to the refunding of debts; and the act of April 17, 1889 (Sess. Laws Colo. 1889, pp. 31, 32, § 2), authorizing counties to refund their judgment and bonded debts, was not unconstitutional because it failed to make a favorable vote of electors a condition precedent to the issue of refunding bonds.

2. SAME—SUBJECT OF STATUTE.

Such act, which is entitled "An act to enable the several counties of the state to refund their bonded debt which was matured or may hereafter mature and to issue bonds in satisfaction of judgments and matured bonds," is not in violation of the provision of the constitution of Colorado (article 5, § 21), that no bill shall contain more than one subject, which shall be clearly expressed in its title; the subject being the refunding of county debts, which includes both judgments and bonds.

3. SAME—REFERENCE TO PRIOR STATUTE.

Neither is the provision of section 4 of the act, which requires the taxes for the payment of bonds issued to be levied as provided in a former act, the title of which is given, void, under Const. Colo. art. 5, § 24. providing that "no law shall be revived or amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

4. SAME—ACT FOR RAISING REVENUE.

Such act is not one for raising revenue, within the meaning of Const. Colo. art. 5, § 31, requiring that such bills shall originate in the house of representatives; and the fact that it originated in the senate does not, therefore, affect its validity.

5. SAME—DEFENSES—JUDGMENT AS ESTOPPEL.

In an action against a county on its bonds issued in satisfaction of a judgment against it, such judgment conclusively estops the county from making the defense that the original indebtedness upon which the judgment was rendered was in excess of the amount which it could legally incur under the limitations imposed by the constitution of the state.

6. SAME—EFFECT OF RECITALS.

As against a bona fide purchaser before maturity of negotiable bonds of a county, containing recitals that they were issued, by virtue of a statute, in satisfaction of judgments which had been rendered against the county in courts of record, the county cannot deny the existence of such judgments.

7. PLEADING—UNNECESSARY AVERMENTS IN COMPLAINT.

Unnecessary averments in a complaint require proof that would not have been essential if the pleading had been confined to the indispensable allegations only, when such averments constitute an essential part of the cause of action as stated. If the cause is well stated without them, they may be disregarded as surplusage, and do not affect the issues.

Caldwell, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

The writs of error in this case challenge a judgment in favor of the board of county commissioners of the county of Ouray which was rendered in an action brought by Robert C. Geer to enforce the collection of overdue coupons

cut from certain refunding bonds issued by that county. The plaintiff, Geer, in his complaint alleged that prior to May 1, 1890, the defendant, the county of Ouray, was indebted to various persons, who had brought actions and had recovered judgments against it in courts of competent jurisdiction for the aggregate amount of $200,000; that for the purpose of paying these judgments the county issued and delivered to its judgment creditors its bonds and coupons in compliance with the terms of an act of the legislature of the state of Colorado approved April 17, 1889 (1 Mills' Ann. St. 1891, §§ 945-948); that the creditors accepted these bonds in payment of their judgments; that the bonds contained this recital: "This bond is issued by the board of county commissioners, of said Ouray county, under and by virtue of an act of the general assembly of the state of Colorado entitled 'An act to enable the several counties of the state to refund their bonded debt which has matured, or may hereafter mature, and to issue bonds in satisfaction of judgments and matured bonds,' approved April 17th, A. D. 1889, in satisfaction at par of judgments and accrued interest thereon which have been rendered in the courts of record in this state against Ouray county aforesaid;" and that he had become the owner for value of that part of this issue of bonds to which the coupons in suit were attached. The county answered this complaint. In its answer it pleaded eight separate defenses. The court sustained a demurrer to the entire answer. Thereupon the defendant amended the sixth and seventh defenses, the plaintiff demurred to them as amended, the court overruled that demurrer, the plaintiff filed a replication, the defendant demurred to the replication, and the court overruled the demurrer to the replication and rendered judgment for the county. Each party has sued out a writ of error. The plaintiff, Geer, assigns the overruling of his demurrer to the amended sixth and seventh defenses, and the sustaining of the demurrer to his replication, as error; and the county insists that the court erred when it sustained the demurrer to its second, third, fourth, and fifth defenses. These defenses are stated and treated in the opinion.

A. E. Pattison (William Story, on the briefs), for Robert C. Geer.

C. S. Sigfrid and Thomas C. Brown (Lyman I. Henry, on the briefs), for the county of Ouray.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first error alleged by the county is that the court below did not sustain the second defense pleaded in its answer. That defense was that the act of April 17, 1889, which provided that "the board of county commissioners of any county in this state, against which a judgment has been or may be rendered in any of the courts of record in this state, may issue its bonds in satisfaction of such judgment and accrued interest thereon, dollar for dollar; such bonds to draw interest at not to exceed eight per centum per annum" (Sess. Laws, Colo. 1889, pp. 31, 32, § 2), was void, and did not authorize the issue of the bonds in question, because section 6 of article 11 of the constitution of Colorado, as amended in 1888, prohibited the creation of the debt evidenced by these refunding bonds without a favorable vote of the electors of the county. The question has already been determined in this court. The answer to the proposition is that the prohibition of the constitution of Colorado is against the creation of a debt by loan, and the mere exchange of the judgments against a county for its refunding bonds creates no debt by loan, or in any other way. The debts existed before as well as after the exchange. The judgments and the bonds are nothing but the legal

evidences of the existence of these debts, and the exchange of the one for the other merely changes the form of the obligations. In Board v. Platt, 49 U. S. App. 216, 220, 25 C. C. A. 87, 89, and 79 Fed. 567, 569, the question of the validity of refunding bonds issued under this very act of 1889 was presented to this court, considered, and decided. The statement which precedes that opinion contains a complete copy of section 6, art. 11, of the constitution of Colorado as it was amended in 1888. A careful consideration of that section after exhaustive argument forced us to the conclusion that the constitution of Colorado imposed no limitation or prohibition upon the power of the legislature to authorize municipal or quasi municipal corporations to refund their debts. It is sufficient to say now, without again reciting at length the section of the constitution in question, or enlarging upon what seems to us its evident meaning, that the briefs and arguments in this case have only served to strengthen and deepen the conviction of the correctness of the ruling in the Platt Case, which in the meantime has been repeatedly affirmed and applied to other cases of the same character. E. H. Rollins & Sons v. Board of Com'rs of Gunnison Co., 49 U. S. App. 399, 411, 26 C. C. A. 91, 98, and 80 Fed. 692, 698; City of Huron v. Second Ward Sav. Bank, 57 U. S. App. 593, 604, 30 C. C. A. 38, 44, and 86 Fed. 272, 278. The result is that section 6, art. 11, of the constitution of Colorado, as amended in 1888, does not limit the power of the legislature of that state to empower municipal and quasimunicipal corporations to refund their debts without a vote of the people; and the act of the general assembly of Colorado of April 17, 1889, which empowered counties to refund their judgment and bonded debts was not unconstitutional because it failed to make a favorable vote of the electors a condition precedent to the issue of the refunding bonds.

The third defense of the county was that the act of 1889 was void because it violated section 21, art. 5, of the constitution of Colorado, which reads:

"No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title: but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title of the bill in question was:

"An act to enable the several counties of the state to refund their bonded debt which has matured, or may hereafter mature, and to issue bonds in satisfaction of judgments and matured bonds."

The alleged vice of the act is that it contained more than one subject, in that it embraced the subject of refunding county debts evidenced by bonds, and the subject of refunding county debts evidenced by judgments. If this is a vice, it is not perceived why a bill to enable the counties of the state to refund their debts evidenced by bonds alone would not be equally obnoxious to the prohibition of the constitution; for the debt evidenced by each bond is a different debt and a different subject from that evidenced by every other bond, in the same sense that a county debt evidenced by a judgment is a different subject from one evidenced by a bond.

The deliberate enactments of legislatures cannot be whistled down the wind on such frivolous pin points as this. The object of this constitutional provision was twofold. It was to prevent surreptitious legislation, the insertion of enactments in bills which were not indicated by their titles, and to forbid the treatment of incongruous subjects in the same act. It never was intended to prevent the legislature from treating all the various branches of the same general subject in one law, or from inserting in a single act all the legislation germane to its principal subject. Travelers' Ins. Co. v. Oswego Tp., 19 U. S. App. 321, 332, 7 C. C. A. 669, 676, and 59 Fed. 58, 64; City of Omaha v. Union Pac. Ry. Co., 36 U. S. App. 615, 623, 20 C. C. A. 219, 223, and 73 Fed. 1013, 1017; City of South St. Paul v. Lamprecht Bros. Co., 31 C. C. A. 585, 587, 88 Fed. 449, 451; Clare v. People, 9 Colo. 122, 125, 10 Pac. 799; Canal Co. v. Bright, 8 Colo. 144, 149, 6 Pac. 142; People v. Goddard, 8 Colo. 432, 436, 7 Pac. 301; Tabor v. Bank, 27 U. S. App. 111, 10 C. C. A. 429, and 62 Fed. 383; Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391; Cooley, Const. Lim. (6th Ed.) pp. 169–172, and cases there cited. The general subject of the act of 1889 was the refunding of county debts. Judgments, bonds, and warrants are different forms of such debts; and the refunding of any or all county debts is but one general subject, and may well be embraced in a single act. The fact that but two branches of this general subject—the refunding of judgments and bonds—are treated in this act does not render it obnoxious to the inhibition of the constitution. It is not a valid objection to the act of 1889, under section 21, art. 5, of the constitution, that it treats of refunding both judgments and bonds, because the refunding of judgments against counties and the refunding of their bonds are but branches of a single subject,—the general subject of refunding county debts.

The fourth defense was that section 4 of the act of 1889 was void because it was in conflict with section 24 of article 5 of the constitution of Colorado, which reads:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

Section 4 of the act of 1889 provided that the necessary taxes to pay the bonds and coupons issued under that act should be levied at the proper time, and then contained this provision, which, it is claimed, is obnoxious to the section of the constitution we have quoted:

"And such tax shall be levied as provided for the levy and collection of taxes in the act entitled 'An act to enable the several counties of the state to fund their floating indebtedness,' approved February 21, 1881."

There is more than one reason why this contention cannot be successfully maintained. If it were conceded that the clause quoted from section 4 violates the section of the constitution here in question, the only effect of that concession would be that the provisions of the act of 1881 with reference to the levy of the taxes to pay the bonds and coupons issued under the act of 1889 would

not be extended so as to authorize that levy. Now, the only essential provision of the act of 1881 on this subject is that the "taxes shall be levied and collected as other taxes." 1 Mills' Ann. St. Colo. p. 797, § 941. But the provisions of section 4 are ample to warrant the levy and collection of the taxes to pay these bonds and coupons in the same way that other taxes are levied without the extension of the act of 1881. They require the necessary levies to be made, and fix the times when they shall be made, and the general statutes of the state impose upon the board of county commissioners the duty "to apportion and order the levying of taxes as provided by law." Id. p. 750, § 791. So that the act of 1889 is valid and operative if the claim of the county here is conceded. Moreover, the position of counsel for the county leads to a result so unreasonable and absurd that courts should hesitate long before adopting it. If the clause of the act of 1889 which refers to the act of 1881 for the method of levying and collecting the taxes which it authorizes is void because that part of the act of 1881 referred to was not re-enacted and published at length, then the portion of the act of 1881 relating to this subject is unconstitutional and void because that act provides that the taxes named in it shall be levied and collected as other taxes, and it does not re-enact and publish at length the general laws of the state which prescribe the method of the levy and collection of other taxes. Constitutions and statutes should be reasonably interpreted, and a reasonable construction of section 24 of article 5 will hardly lead to a result so absurd. We are, however, spared the discussion and decision of this question, because the federal courts uniformly follow the construction given by the highest judicial tribunal of the state to the constitution and statutes of that state, where no question of general or commercial law, and no question of right under the constitution and laws of the nation, is involved (Madden v. Lancaster Co., 27 U. S. App. 528, 535, 12 C. C. A. 566, 570, and 65 Fed. 188, 192); and, under the construction repeatedly given by the supreme court of Colorado to the section of the constitution under consideration, the obnoxious clause of section 4 of the act of 1889 was not in conflict with it. The act of 1889 was a general law of the state of Colorado on the subject of refunding county indebtedness, and the supreme court of Colorado holds that it was not the purpose or effect of this constitutional provision to require a re-enactment or republication of the provisions of the general laws of the state when reference is made to them in later statutes for a definition of rights, or for a specification of the lawful method of procedure under the subsequent laws. Railroad Co. v. Nestor, 10 Colo. 403, 408, 414, 15 Pac. 714; Edwards v. Railroad Co., 13 Colo. 59, 66–69, 21 Pac. 1011; People v. Banks, 67 N. Y. 568; People v. Mahaney, 13 Mich. 481, 496. The demurrer to the fourth defense was properly sustained.

The fifth defense was that the act of 1889 was void because it was a bill for raising revenue, and it originated in the senate, in violation of section 31, art. 5, of the constitution of Colorado, which reads, "All bills for raising revenue shall originate in the

house of representatives; but the senate may propose amendments, as in case of other bills." But a bill for raising revenue, within the meaning of this provision of the constitution, is one which provides for the levy and collection of taxes for the purpose of paying the officers and of defraying the expenses of the government. This act was not of that character. Its main purpose was to authorize certain quasi municipal corporations to refund their debts. The provisions for the levy and collection of taxes which it contained were mere incidents to the general refunding legislation which it carried. The probability is that they did not even increase the taxes which the counties were required to levy. for they were bound to lay taxes to pay their debts and the interest upon them before as well as after they were refunded. These provisions raise no revenue for the government, but, on the other hand, the act expressly provided that the moneys derived from the levies made under it should not be appropriated to pay the officers of the state or of the county, or to defray the expenses of governing the people, but should be set apart and applied exclusively to pay the bonds and coupons issued under it for the purpose of refunding the debts of the counties. There was no merit in this defense.

The sixth defense was that the debts upon which the judgments which were paid by the refunding bonds were rendered were invalid because the county had reached the constitutional limit of its indebtedness before those debts were incurred, and this fact was not presented to, nor its legal effect adjudicated by, the court in the actions in which the judgments were entered. But the plaintiff, Geer, holds bonds and coupons issued in payment of these judgments. He stands in privity with the plaintiffs in those judg;. ments, to the extent that he may invoke and rely upon every presumption and estoppel of which they might have availed themselves; and in an action between the same parties, or those in privity with them, upon the same claim or demand, a judgment upon the merits is conclusive, not only of every matter offered, but of every admissible matter which might have been offered, to sustain or defeat the claim or demand. "A judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest" (Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 691, 15 Sup. Ct. 733); and in rendering these judgments against this county the courts necessarily determined that the debts upon which they are based were not in excess of the constitutional limitation; that the board of county commissioners had lawful authority to, and that it did in fact, incur them; and that they constituted lawful obligations of the county. All these questions were considered, the authorities which treat of them were examined and reviewed, and this whole matter was disposed of, in the opinion of this court in Board v. Platt, 49 U. S. App. 216, 224, 25 C. C. A. 87, 92, and 79 Fed. 567, 572, where the reasoning which led to the decision, and a citation of the authorities upon which it rests, may be found. The conclusion at which we arrived in that case, and to which we still adhere, was expressed in these words:

"In an action to enforce the collection of a judgment or the collection of bonds or coupons issued in payment of a judgment against a municipal or quasi municipal corporation, the judgment conclusively estops the corporation from making the defense that the original indebtedness evidenced by it was in excess of the amount which the corporation had the power to create, under the limitations of the constitution of the state in which it was incorporated."

The seventh defense was that there never were any judgments in payment or satisfaction of which the bonds were issued. This is a good defense against the bonds in the hands of the original creditor who accepted them in exchange for the indebtedness of the county to him, upon which he had obtained no judgments. The plaintiff replied to this defense, however, that he had acquired the bonds and coupons for value, before maturity, without notice of any defect in them, and that he paid the consideration for his purchase in reliance upon the recital which was contained in each bond, that it was issued, by virtue of the act of 1889, "in satisfaction at par of judgments and accrued interest thereon which have been rendered in the courts of record in this state against Ouray county aforesaid." The act of 1889 empowered the board of county commissioners to issue these bonds in satisfaction of judgments against the county. The board could not do this until it had first ascertained and decided what judgments there were against the county. Thus the law, by its very terms, necessarily vested the power in, and imposed the duty upon, this board to determine whether or not the judgments existed, in satisfaction of which it issued the bonds. The entry of the judgments was a condition precedent to the exercise of the power to issue the bonds,—a condition whose existence it was the duty of the board to ascertain before it issued them. It discharged this duty. It searched and found that the judgments existed. It issued the bonds in payment of the judgments, and it certified on the face of each bond that it was issued in satisfaction of judgments against the county "by virtue of" the act of 1889. A bona fide purchaser has bought and paid for these obligations in reliance upon this certificate. It is now too late for this county to prove its falsity, to defeat the bonds. As against an innocent purchaser, a quasi municipal corporation cannot deny the certificate of its authorized officers that its bonds were issued by virtue of an act to refund its indebtedness, and prove that it had no indebtedness to refund, and that the bonds were issued to build a sugar factory (West Plains Tp. v. Sage, 32 U. S. App. 725, 736, 16 C. C. A. 553, 558, and 69 Fed. 943, 946), or that the alleged indebtedness which they were issued to pay was void or fictitious, or did not exist (City of Huron v. Second Ward Sav. Bank, 57 U. S. App. 593, 604, 30 C. C. A. 38, 43, and 86 Fed. 272, 277). Nor can a county which was empowered to issue bonds to satisfy judgments against it deny the certificate of the officers empowered to emit them, that they were issued in satisfaction of those judgments, and prove that there never were any judgments to satisfy, in order to defeat the bonds in the hands of an innocent purchaser. The recitals of officers who are invested with authority to determine when conditions precedent to the issue of negotiable bonds are

complied with, and with power to issue them upon the fulfillment of such conditions, that they have been sent forth "in pursuance of," or "in conformity with," or "by virtue of" the statute which authorizes their issue under the prescribed conditions, preclude inquiry, as against innocent purchasers for value, as to whether or not the precedent conditions had been performed when the bonds were issued. City of Huron v. Second Ward Sav. Bank, 57 U. S. App. 593, 606, 30 C. C. A. 38, 45, and 86 Fed. 272, 279; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 27 U. S. App. 244, 266, 268, 10 C. C. A. 637, 651, 652, and 62 Fed. 778, 792, 793, and cases there cited; West Plains Tp. v. Sage, 32 U. S. App. 725, 736, 16 C. C. A. 553, 558, and 69 Fed. 943, 948; E. H. Rollins & Sons v. Board of Com'rs, 49 U. S. App. 399, 412, 26 C. C. A. 91, 98, and 80 Fed. 692, 699; Brown's Ex'x v. Ingalls Tp., 57 U. S. App. 611, 615, 616, 30 C. C. A. 27, 29, and 86 Fed. 261, 263; City of South St. Paul v. Lamprecht Bros. Co., 60 U. S. App. 78, 85, 31 C. C. A. 585, 589, and 88 Fed. 449, 453; Rathbone v. Board, 49 U. S. App. 577, 589, 27 C. C. A. 477, 483, and 83 Fed. 125, 131; Wesson v. Saline Co., 34 U. S. App. 680, 684, 20 C. C. A. 227, 229, and 73 Fed. 917, 919; City of Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613.

An attempt is made to escape from the effect of the estoppels of the judgments and of the recitals in the bonds on the ground that the plaintiff pleaded the original debts and the judgments upon them, and thereby waived the estoppels. The complaint comprises 14 paragraphs. The first three contain jurisdictional allegations. The fourth and fifth allege the indebtedness of the county to divers persons, and the recovery by them of judgments against it upon these debts. The remainder of the complaint sets forth the issue and delivery of the bonds in satisfaction of the judgments, the recitals which the bonds contained, their purchase for value by the plaintiff, and the default in the payment of the coupons. If the fourth and fifth paragraphs were stricken from the complaint, it would still state a perfect cause of action upon the coupons, and would contain a statement of all the facts from which the estoppels arise. Moreover, the replication restates the facts constituting the estoppels, and expressly avers that the county is concluded thereby. In this state of the case, the claim that the estoppels were waived because the original debts and the judgments were pleaded cannot prevail. It is, indeed, sometimes the case that unnecessary averments require proof that would not have been essential if the pleading had been confined to allegations indispensable to a statement of the cause of action. But this is true only when immaterial averments constitute an essential part of the cause of action as it is pleaded. If the cause is well stated without them,—if their removal from the complaint would still leave averments sufficient to constitute a cause of action,—they are mere surplusage, and may be disregarded. 1 Estee, Pl. (4th Ed.) § 191; Bliss, Code Pl. § 215. That is the condition of this complaint, and the restatement in the replication of the judgments, the recitals in the bonds, and their purchase by the plaintiff in reliance

upon the judgments and recitals leave no doubt that the plaintiff did not intend to waive, and that he did not waive, the estoppels which these facts raised, and that the defendant could not have been misled by the pleadings into the mistaken belief that he had done so.

The result of the whole matter is that none of the errors alleged by the county exist; that the demurrers to the second, third, fourth, and fifth defenses were properly sustained; that the demurrer to the sixth defense was well taken, and the demurrer to the replication to the seventh defense should have been overruled. The judgment below is accordingly reversed, with costs to the plaintiff in error, Geer, and the case is remanded to the court below for further proceedings in accordance with the views expressed in this opinion.

CALDWELL, Circuit Judge. I dissent from the reasoning and conclusion of the court on the "seventh defense," and, in support of my dissent, refer to my dissenting opinion in West Plains Tp. v. Sage, 32 U. S. App. 725, 16 C. C. A. 553, 562, and 69 Fed. 943, 946, and the cases there cited.