ST. LOUIS & S. F. R. CO. v. SOUTHWESTERN TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1903.)

No. 1,800.

1. UNAUTHORIZED CONDEMNATION—INJUNCTION—REMEDY TO RESTRAIN IN ARKANSAS.

A bill in equity for an injunction is the proper remedy in the state of Arkansas to restrain an unauthorized exercise of the power of eminent domain.

2. INCORPORATION STATUTES—FACT, NOT APPEARANCE, TEST OF COMPLIANCE.

Where a statute requires articles of incorporation to be signed by the president and directors, the fact that the president and the directors signed them is a compliance with the statutes, notwithstanding the fact that they did not affix their official titles to their signatures.

**8. SAME—FILING ARTICLES IN COUNTY CHOSEN AS PLACE OF BUSINESS SUFFICIENT.**

The filing of the duplicate of the articles of incorporation with the clerk of the county selected by the corporation as its place of business is a sufficient compliance with the provisions of section 1334, Sandels & H. Dig., upon this subject. It is not necessary to file a duplicate in every county to which the business of the corporation extends.

**4. CONDEMNATION—SURVEY NOT PREREQUISITE WHERE DESCRIPTION SUFFICIENT WITHOUT IT.**

A survey of a telephone or telegraph line is not an indispensable prerequisite to condemnation proceedings under section 2770, Sandels & H. Dig., where the data for a clear and substantial description and location of the line exist without it.

**5. SAME—DESCRIPTION OF ROUTES IN ARTICLES.**

A description of the routes of lines of telegraph or telephone to be constructed, in the articles of incorporation of a telephone company, is not indispensable to the acquisition of the power to condemn the right of way for such lines, under sections 1326, 1328, Sandels & H. Dig., if the general purpose of conducting a telegraph or telephone business throughout the state is plainly stated therein.

**6. SAME—INJUNCTION AGAINST ENTRY.**

Where a failure to agree is alleged in a petition for condemnation, and is a condition precedent to the right to condemn, the fact that there was no such failure is no ground for an injunction against entry thereunder, because the owner has a perfect remedy at law by answer and trial in the condemnation proceedings.

**7. CONSTITUTION OF ARKANSAS—LIMITS LEGISLATIVE RIGHTS, BUT DOES NOT AFFECT REMEDIES OR PROCEDURE.**

Section 23, art. 5, of the Constitution of Arkansas, which reads, "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length," limits legislation which grants, modifies, or destroys rights, but it has no application to legislation which affects remedies and methods of procedure alone.

**8. SAME—TELEPHONE COMPANIES—CONDEMNATION.**

The act of March 31, 1885, Act No. 107, p. 176, Acts Ark. 1885 (sections 2757, 2758, 2770, Sandels & H. Dig.), which grants to telephone and telegraph companies the right to condemn the right of way along railroads, highways, and postroads, and provides that the proceedings thereunder shall be conducted as prescribed in sections 2770–2781, inclusive, Sandels & H. Dig., is constitutional and valid.

**9. SAME—NECESSITY FOR TAKING—JUDICIAL QUESTION.**

The necessity for the taking by a corporation of the easement or property sought in condemnation proceedings is a judicial question, to be determined by the court upon a consideration of the power of eminent domain granted to the corporation, and the facts and circumstances of the case.

**10. SAME—WHERE RIGHT TO CONDEMN EASEMENT EXPRESSLY GRANTED.**

Where the Legislature has granted to a telephone company the right to condemn an easement on the right of way of a railroad company for the construction and operation of a telegraph and telephone line, with a proviso that the ordinary use of the right of way by the railroad company for its purposes shall not be thereby obstructed, the issue regarding the necessity of the taking of the easement sought by the telephone company is limited to two questions, namely:

(1) Will the use of the right of way by the railroad company be substantially obstructed by the use of the easement sought?

(2) If the telephone company is to acquire an easement for its purposes on the railroad right of way, is the location and character of the

---

¶ 9. See Eminent Domain, vol. 18, Cent. Dig. § 536.

easement which it describes and seeks to acquire such that this easement is necessary for its use?

The question whether the telephone company could construct and operate its lines on other property, so that there is no real necessity for it to acquire any easement on the railroad right of way, is not open to determination under such a law, because the Legislature has granted the right to acquire the easement notwithstanding the fact, which must have been patent to it, that telegraph and telephone lines might in every case be constructed elsewhere than upon the railroads and highways mentioned in the statute.

**11. SAME—ARKANSAS CORPORATION NO POWER IN INDIAN TERRITORY.**
A corporation of the state of Arkansas has no right, by virtue of the laws of that state, to exercise the power of eminent domain in the Indiana Territory.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Arkansas.

On March 31, 1902, the Southwestern Telephone & Telegraph Company filed a petition in the circuit court for Sebastian county, in the state of Arkansas, to condemn an easement for the poles and wires of a telephone and telegraph business along the railroad and on the right of way of the St. Louis & San Francisco Railroad Company between Ft. Smith and Huntington, in the state of Arkansas, a distance of 32 miles. On April 11, 1902, the judge of the Sebastian county court made an order under sections 2770–2782, Sandels & Hill's Digest of the Laws of Arkansas, that upon the deposit of $1,500 the telephone company might enter upon the right of way of the railroad company, erect its poles, and string its wires. This proceeding for condemnation was removed to the Circuit Court of the United States. Afterwards, and on July 7, 1902, the railroad company filed in the latter court a bill in equity to perpetually enjoin the telephone company from entering upon or using any portion of the right of way of the railroad company for its telephone or telegraph business. A general demurrer was interposed to this bill by the telephone company, which was sustained by the court, and a decree was rendered dismissing the bill. This appeal assails this decree. The bill and the exhibits attached to it are voluminous. Its material averments must be considered in weighing the arguments for the appellant, and they will not be set forth at length here, but will be stated and considered in the opinion.

B. R. Davidson (L. F. Parker, on the brief), for appellant.

T. P. Winchester, W. R. Martin, W. L. Terry, and W. J. Terry, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This is a bill in equity to enjoin the telephone company from prosecuting condemnation proceedings to secure an easement upon the right of way of the railroad company. If, as counsel for the appellant contend, the bill fairly shows that the telephone company was not a corporation, that it had no power of eminent domain, and that there was no necessity for it to use any of the right of way of the railroad company for its telephone or telegraph business, then the railroad company had the right to prevent it from entering upon its right of way; and this suit in equity for an injunction was the proper method of obtaining this relief, under the practice and decisions in the state of Arkansas. Niemeyer v. Little Rock Junction Railway, 43 Ark. 120.

The question, therefore, is whether or not the bill fairly shows that the defendant was without authority to condemn and secure the easement it seeks.

I. Counsel for the appellant argue that the telephone company never became a corporation, because of this state of facts, which is disclosed by the bill and its exhibits:   The statutes of Arkansas provided that any number of persons, not less than three, who by articles of agreement should associate, under any name assumed by them, to carry on any kind of manufacturing, mechanical, mining, or other lawful business, and who should comply with all the provisions of the act, should constitute a corporation (Sandels & H. Dig. § 1326); that, before any such corporation should commence to do business, the president and directors thereof should file with the Secretary of State a true copy of their articles of association, signed by the president and a majority of the directors, and a sworn certificate of the purpose for which the corporation was formed, the amount of its capital stock, the amount actually paid in, the names of its stockholders, and the number of shares by each respectively owned; and that they should also file a duplicate with the clerk of the county in which the corporation was to transact business.   Sections 1334, 1346.   On April 13, 1896, Charles J. Glidden, James A. Chambers, and Arthur F. Adams associated themselves together, by articles of agreement, in writing, under the name of the Southwestern Telephone & Telegraph Company, to engage in the business of erecting and operating a telephone and telegraph.   They held a meeting on that day, elected themselves directors, these directors chose Charles J. Glidden president of the corporation, and the president and directors signed and verified by their oaths the certificate required by section 1334.   On the same day Glidden, Adams, and Chambers signed the articles of agreement and incorporation; but Glidden did not write the word "President" after his signature, nor did the three parties who signed the articles of association write the word "Directors" after their signatures.   On April 4, 1896, the president and directors filed with the Secretary of State these articles, signed in this way, and the sworn certificate required by section 1334.   Now, the alleged defect in this incorporation is that, whereas the statute required that the copy of the articles of incorporation filed with the secretary should be signed by the president and the directors, the copy filed was signed by the three individuals, Glidden, Adams, and Chambers.   But these individuals were in fact the president and the directors of the corporation on April 4, 1896, when they filed the copy of the articles with the secretary, and the presumption is that they were such when they signed them upon the day before, for the legal presumption always is that the officers of corporations and municipalities faithfully discharge their duties.   It was the fact of the signature of the articles by the president and the directors, and not the appearance of that fact, that conditioned the validity of the incorporation.   There is no averment in the bill that, when these articles were signed, Glidden was not the president, and the three signers were not the directors.   The only averment is that they did not sign them as such. As, under the legal presumption, they were the president and the di-

rectors when they signed the articles, so that the fact corresponded with the requirement of the statute, the incorporation of the company is not invalid because the president and directors failed to write their official titles after their names. This conclusion becomes irresistible when it is considered that at the same time that these articles were filed with the secretary of state the president and directors also filed with him the certificate required by section 1334, signed and verified by the president and a majority of the directors of the corporation, in which they set forth the fact that Glidden was the president, and that the three signers of the articles were the directors, of the corporation, so that when the articles and the certificate, which were filed together with the secretary, are read together, the fact that the former were signed by the president and the directors appears upon the face of the papers.

2. Another objection to the incorporation is that no duplicate of the articles of association was filed with the clerk of Sebastian county in the state of Arkansas. But the place of business selected by the corporation, and specified in the articles of association, was Little Rock, in Pulaski county; and the bill contains no averment that the duplicate of the articles was not filed with the clerk of that county, while the legal presumption is that it was filed there, because the presumption is that the officers discharged their duty, and because, under section 1334, a copy of the certificate filed in the office of the Secretary of State is made prima facie evidence of the due formation, existence, and capacity of the corporation. The case presented by the bill, then, is that a duplicate of the articles of incorporation was filed in the county of Pulaski, the county which was selected by the corporation and specified in its articles as the place where it was to transact business, but it was not filed in the county of Sebastian. But the statute did not require it to be filed in every county into which the business of the corporation might extend, but only in the county which should be selected and specified in the articles as that in which the general business of the corporation was to be transacted. The corporation fully complied with the requirement of the statute here under consideration when it filed a copy of its articles in Pulaski county, and the objection that it failed to file it in other counties is untenable.

3. It is insisted that the defendant has no power to condemn an easement along the right of way of the railroad company, because it did not survey and locate its line before instituting its proceedings; and the clause of section 2770, Sandels & H. Dig., which reads, "Any railroad, telegraph or telephone company organized under the laws of this state, after having surveyed and located its lines of railroad, telegraph or telephone, shall in all cases where such companies fail to obtain by agreement with the owner of the property through which said lines of railroad, telegraph or telephone may be located the right of way over the same, apply to the circuit court of the county" to have the damages for the taking assessed, is cited in support of this contention. But the only purpose of the survey and location mentioned in this section is to secure a description of the property to be affected, and to give fair notice to the owner of the

extent of the right which the condemning company seeks. No survey was necessary to accomplish this end in the case before us, because the right of way of the railroad company and the railroad itself furnished the data for a substantial description and location of the easement which the telephone company sought, and which it fairly describes in its petition for condemnation attached to the bill in this suit, in these words:

"A line of poles and wires constituting a telegraph and telephone line from the city of Fort Smith to the town of Huntington; the said line of poles and wires to be placed along the right of way of said railroad as follows, to wit: Beginning on the right of way of said railroad company at Fort Smith on the side opposite the side now occupied by the poles and wires of the Western Union Telegraph Company, forty feet from the center line between the rails of its main track, and continuing at said distance where the right of way of defendant will permit of going so far, and not nearer than fifteen feet from the center line between the rails of the main track in any event, and not less than fifteen feet from the center line between the rails of all said tracks, switches, spurs, etc., to the town of Huntington."

This description and location of the easement sought was sufficiently clear and accurate to form the basis of a petition for condemnation, because it fairly apprised the railroad company of the right to be condemned. The law never requires the performance of a useless act, and, as the data for a plain and substantial description and location of the easement which the telephone company was seeking to condemn existed without a survey, no survey was requisite to the commencement or maintenance of its proceedings for condemnation.

4. The articles of incorporation of the telephone company state the purpose of its incorporation in these words:

"Fourth. The general nature of the business proposed to be transacted by this corporation is that of telephone and telegraphy.

"Fifth. The general route of the lines of said corporation shall be from a point or points in the city of Little Rock to a point or points in the town of Benton, both within the state of Arkansas, and from point or points in all the cities, towns and villages in the state of Arkansas along all railroads, bridges, streets, highways and other convenient ways and courses leading thereto."

Benton is about 23 miles southwesterly of Little Rock, so that the line specified in these articles was about 23 miles long. The line which the telephone company now seeks to build, and for which it has instituted these condemnation proceedings, commences at Ft. Smith, a distance of 164 miles from the city of Little Rock, and is but 32 miles in length, so that it is not a portion of the specific line mentioned in the articles of incorporation. It is insisted that the telephone company has no power to condemn an easement for this line, because it is not mentioned in its articles. But the statute under which this corporation was organized did not require it to state in its articles of incorporation the lines it would build or the business it would transact. On the other hand, it authorized the organization of the corporation "for the purpose of engaging in or carrying on any kind of manufacturing, mechanical, mining or other lawful business." Section 1326. Section 1328 provides that the purpose for which every such corporation shall be established shall be distinctly

and definitely specified in the articles of association, and that it shall not be lawful for the corporation to direct its operations or appropriate its funds for any other purpose, and there are no more specific or drastic provisions of the statutes of Arkansas upon this subject. When the telephone company stated in its articles that the purpose of its incorporation was to conduct a general telephone and telegraph business, it fully complied with the literal terms and accomplished the desired end of these provisions of the law, and acquired ample authority to condemn easements and construct telephones between any of the cities or towns of the state of Arkansas. The Legislature, in its wisdom, empowered corporations, upon a bare statement of the general purpose of their existence, to conduct any lawful business. It did not require them to state how, when, or where all that business should be transacted, but left the extent of the business, and the means by which it should be carried on, to the discretion of the officers of the corporations, and to other provisions of the statutes and of the law that are not here in question. It was not necessary for this corporation to specify in its articles every mile of the routes upon which it might at any time in the future conduct its business, in order to acquire the power of eminent domain to condemn an easement for lines it might wish to construct. The statement of the purpose of the corporation was ample to empower it to condemn a right of way in the state of Arkansas along the line here in issue.

5. Under section 2770, a failure to agree with the owner of the property is a condition precedent to the right to condemn any interest therein; and the complainant alleges in its bill that the telephone company never made any effort to obtain the right of way it seeks, and never failed to agree with the petitioner relative to its acquisition. But the petition for the condemnation of the easement, a copy of which is attached to the bill, contains the averment that the telephone company has made an honest effort to secure the right of way it seeks from the defendant, and that the latter declines to permit it to acquire this easement upon any terms whatever. This averment is jurisdictional and triable in the condemnation proceedings, and, if it is not true, that fact will compel their dismissal. Lewis on Eminent Domain, §§ 301, 357; Reed v. Ohio & Mississippi Ry. Co., 126 Ill. 48, 52, 17 N. E. 807; Toledo, A. A. & N. M. Ry. v. Det., L. & N. R. R. Co., 62 Mich. 564, 576, 29 N. W. 500, 4 Am. St. Rep. 875; G. R., L. & D. R. Co. v. Weiden, 69 Mich. 572, 579, 37 N. W. 872; Railroad Co. v. Sanford, 23 Mich. 418; Matter of Marsh, 71 N. Y. 315, 318; Gilmer v. Lime Point, 19 Cal. 47, 60; Elliott on Railroads, § 1119. As the complainant may plead and prove in the condemnation proceedings the fact that there was no failure to agree, and may thereby defeat them, that fact forms no basis for an independent suit in equity to enjoin the entry of the telephone company under those proceedings. The remedy by answer and trial of this issue in the action at law is not only adequate, but complete, and the bill in equity cannot be sustained upon this ground.

6. It is contended that the condemnation proceedings are void because the act under which they are taken is violative of section 23

of article 5 of the Constitution of Arkansas. The act in question is Act No. 107, p. 176, of the Acts of Arkansas of 1885. Section 1 provides that any corporation organized for the purpose of transmitting intelligence by telegraph or telephone may construct and operate telegraph and telephone lines along the public highways, streets, and railroads within the state of Arkansas, provided that the ordinary use of such highways, streets, and railroads shall not thereby be obstructed, and that just damages shall be paid to the owners thereof for their occupation by the telegraph and telephone corporations. Section 2 declares that, in the event that such telegraph or telephone companies fail to secure the right of way by consent or agreement, then they shall have the right to condemn the easements they require "in the manner prescribed by law for taking private property for right of way for railroads as provided by section 5458 to 5467, both inclusive, of the Revised Statutes of Arkansas, 1884." Sandels & H. Dig. §§ 2770 to 2781, inclusive. Section 13 provides that section 5458 be amended so that it will read that any railroad, telegraph, or telephone company organized under the laws of the state of Arkansas shall, in all cases where they fail to obtain by agreement with the owner of property the right of way over it, apply to the circuit court of the county in which the property is situated, by petition, to have the damages assessed. The sections of the act of March 31, 1885, to which reference has been made, are sections 2757, 2758, 2770, Sandels & H. Dig. 1894.

The provision of the Constitution of Arkansas to which it is said that these sections are obnoxious reads:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length."

The argument is that the act under which these condemnation proceedings are conducted is void because sections 2770 to 2781, inclusive, of Sandels & Hill's Digest, were extended to telephone companies by reference to their numbers, without re-enacting and publishing them at length. The answer to this argument is twofold: In the first place, the right to condemn was conferred, and the power of eminent domain was granted to the telephone and telegraph companies, not by reference, but by enactment, by sections 1, 2, and 13 of the act of March 31, 1885 (sections 2757, 2758, 2770, Sandels & H. Dig.); and even if that portion of the act which took effect by reference, and which simply prescribed the method of procedure for the condemnation proceedings, had been unconstitutional, there was ample power in the court, under the common law, to proceed to effect the condemnation after the right and power had been given. The second answer to this contention is that while section 23, art. 5, of the Constitution of Arkansas, limits legislation which grants, modifies, or destroys the rights of parties, it has no application to legislation which simply affects remedies and methods of procedure. Watkins v. Eureka Springs, 49 Ark. 131, 134, 4 S. W. 384; Geer v. Board of Com'rs of Ouray Co., 97 Fed. 435, 439, 38 C. C. A. 250, 254. As all that portion of the act of 1885 which conferred any rights upon the telephone and telegraph companies was enacted and pub-

lished at length, and the only portion which extended any provisions of the law by reference to sections related to the method of procedure alone, the act was neither unconstitutional nor void, and it conferred plenary power upon the telephone company to condemn the easement it seeks.

7. The complainant alleges in its bill that its right of way between the cities of Ft. Smith and Huntington has been condemned and is necessary for railroad purposes; that the construction of a telephone and telegraph line, and the granting to another company of the right to enter and to erect improvements upon the complainant's premises, would be a great obstruction and interference with their uses for railroad purposes, would constitute an unnecessary interference with the complainant's enjoyment of its property, would impair its value to the extent of $15,000, and would add to the hazards of the traveling public. It avers that there is no public necessity for the construction of this line of telephone and telegraph, or for the condemnation of its right of way for that purpose, and alleges that the only reason for the defendant's desire to condemn it is the saving which may be made by the use of its property, instead of that which is not used for railroad purposes, and which is equally accessible to the telephone company. These averments of the bill, however, must be taken in connection with the allegations of the petition for condemnation, which is attached to it, and which disclose this state of facts: The railroad company is the owner of a right of way between Ft. Smith and Huntington 100 feet in width, with a single-track railroad on or near the center thereof, about 4 feet 8½ inches wide, with the necessary switches, turnouts, turntables, water tanks, station houses, and section houses. The Western Union Telegraph Company has a telegraph line upon one side of this right of way. The telephone company intends to construct a line of poles and wires on the other side of this right of way, 40 feet from the center line between the rails of the main track, wherever the right of way of the defendant will permit, and not nearer than 15 feet from the center line of the rails in any event. The poles will be not less than 25 feet long, not less than 6 inches in diameter at the small ends nor more than 18 inches in diameter at the large ends. They will be placed firmly in the ground, and guyed at all curves so as to resist the tension of the wires. They will average about 35 to the mile. Where it is necessary to cross the track of the railroad company, they will be of sufficient height and distance apart to raise all wires clear above all other wires or structures upon the right of way, and will be so strung that they will not come nearer than 25 feet from the top of the rails of the railroad. The poles will be set so as not to interfere with any ditch, drain, or culvert of the railroad company. In the event that the railroad company should desire to change the location of its track, or to make any improvements upon its right of way, the telephone company agrees to remove its poles to any part of the right of way adjacent, designated by the railroad company, at its own expense. It agrees to allow the defendant to take dirt, gravel, stone, water, and other materials from the part of the right of way occupied by its poles and wires; and, in case the railroad

company grades its right of way, the telephone company agrees at its own expense to reset its poles to conform to the new grade. It assumes all risks to its poles, wires, and property, and agrees to hold the railroad company harmless from any damages occasioned by the burning of grass upon the right of way. The stipulations and promises contained in this petition will be binding upon the telephone company and its successors if it thereby secures the easement it seeks. St. Louis & C. R. Co. v. Postal Tel. Co. (Ill.) 51 N. E. 382, 391; Chicago & A. R. Co. v. Joliet, L. & A. Ry. Co., 105 Ill. 388, 44 Am. Rep. 799; Peoria & P. U. R. Co. v. Peoria & F. Ry. Co., 105 Ill. 110; Mobile & O. R. Co. v. Postal Tel. Cable Co. (Miss.) 26 South. 370, 45 L. R. A. 223.

The main question which these averments of the bill and the petition for condemnation, which is in reality a part of it, present, is whether or not there is any necessity for the taking of the ease-ment sought by the telephone company upon the right of way of the railroad company. It is conceded that the necessity of the taking by a corporation of the easement or right which it seeks in condemna-tion proceedings is a judicial question, which must be determined by the court upon a thoughtful consideration of the powers lawfully granted to the corporation, and of the facts and circumstances of the case in hand. It is a basic rule of the exercise of the power of eminent domain that property devoted to one public use cannot be lawfully taken for another and inconsistent use without express or plainly implied legislative authority. Chicago & A. R. Co. v. City of Pontiac, 169 Ill. 155, 48 N. E. 485. Nor can one corporation condemn and take away the franchise or right to the use of prop-erty already devoted to a public use for the benefit of another cor-poration for the mere sake of economy, or by virtue of any necessity created for its convenience. Nothing less than an absolute necessity which arises from the very nature of things will warrant such a pro-ceeding. Pennsylvania Railroad Company's Appeal, 93 Pa. 150; Pittsburg Junction Railroad Company's Appeal, 122 Pa. 511, 6 Atl. 564, 9 Am. St. Rep. 128. These rules apply to cases in which the second use is inconsistent with the first, and practically destroys it. They are inapplicable to the case at bar, because the use to which the telephone company proposes to put the right of way of the railroad company is not necessarily inconsistent with or destructive to its use for railroad purposes, and because express legislative authority has been given to the telephone company to acquire the easement it seeks. The state of Arkansas has expressly empowered telephone companies to construct and operate telegraph and telephone lines along the railroads within that state, provided the latter are not thereby ob-structed, and just damages are paid to their owners. Sections 2757, 2770, Sandels & H. Dig. This legislation forecloses the question strenuously urged upon our consideration, whether the telephone com-pany could not at some greater expense construct and operate its lines between Ft. Smith and Huntington over property that has not been appropriated to railroad uses. It forecloses it because it is plain that no case could ever arise in which a telephone or telegraph com-pany might not construct and operate its line over private property,

instead of along railroads or public highways. This fact was patent to the Legislature of Arkansas when it enacted this statute, and its grant of the power to these companies, notwithstanding this fact, to condemn and use the railroad rights of way and the public highways for their poles and wires, was a determination that they should be entitled to this privilege, notwithstanding the fact that considerations of economy and convenience alone should dictate their choice of these locations. This legislation narrows the issue of necessity to two questions: First, will the use of the right of way by the railroad company for its purposes be substantially obstructed by the easement sought by the telephone company? and, second, if the telephone company is to acquire an easement on the railroad right of way, is the location and character of the easement which it seeks to obtain necessary for its use? If either of these questions should be answered in the negative, the attempted condemnation ought not to proceed. If they should both receive affirmative answers, the necessity of the condemnation of the easement sufficiently appears, and proceedings to affect it ought not to be enjoined upon this ground. The burden was upon the complainant to show by the allegations of its bill that these questions should be answered in the negative. Those averments and the allegations of the petition for condemnation have been set forth at length, and they will not be repeated. They must be considered together, and, when so considered, they fail to present a case in which it fairly appears that the use of the right of way of the railroad company for the purposes of operating its trains and conducting its business will be either unnecessarily or materially obstructed by the construction and operation of the contemplated lines of telephone and telegraph, or in which it appears that the telephone company is seeking to acquire any easement upon this right of way which is not necessary for the construction and operation of its lines. For these reasons, the demurrer ought not to be sustained either because there is no necessity for the taking of the easement which the telephone company seeks, or because the construction and operation of its lines will materially obstruct the use of the right of way for the purposes of the railroad company. St. Louis & C. R. Co. v. Postal Tel. Co. (Ill.) 51 N. E. 382, 386, 387; Mobile & Ohio R. Co. v. Postal Tel. Cable Co., 26 South. (Miss.) 370, 372, 45 L. R. A. 223; Savannah, F. & W. Ry. Co. v. Postal Tel. Cable Co. (Ga.) 38 S. E. 353, 355; Lewis on Eminent Domain, § 269; M. & O. R. Co. v. Postal Tel. Cable Co. (Ala.) 24 South. 408, 411.

8. The complainant avers in its bill that the railroad runs for about a mile and a half near the town of Bonanza, and for a considerable distance just north of the town of Jensen, through the Indian Territory, and that the telephone company is not incorporated in that territory, has no right to exercise the power of eminent domain, and has instituted no proceeding to condemn the right of way therein. The telephone company, a corporation of the state of Arkansas, has no right to exercise the power of eminent domain in the Indian Territory, and this averment of the bill is fatal to the proceedings for the condemnation of any part of the right of way of the railroad company within that territory, and to the general demurrer. The result

is that, while there is no equity in the bill to warrant the restraint of the proceedings to condemn the easement sought by the telephone company upon the right of way of the railroad company in the state of Arkansas, it presents good ground for an injunction against the telephone company to prohibit it from entering upon the right of way of the railroad company in the Indian Territory.

The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with instructions to issue an injunction restraining the telephone company from entering upon the premises of the railroad company, or erecting any improvements thereon, in the Indian Territory, until by proper condemnation proceedings or otherwise it shall acquire an easement therein, or until the further order of the court, and with directions to take farther proceedings herein not inconsistent with the views expressed in this opinion.