No. 8512.

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v.
SCHOOL DISTRICT NO. 1, IN YUMA COUNTY, ET AL.

1. CONSTITUTIONAL LAW—*Revenue Bills.* An act for establishing a
general system of free schools, providing for the levying and
collection of taxes as incident to the main purpose, is not
within the condemnation of sec. 31 of Art. V of the Constitution.
Neither is a supplemental or amendatory act, looking
to the same end. Chap. 206, Laws of 1911, is not a bill for
raising revenue within the meaning of the Constitution.

2. WORDS AND PHRASES—*Government,* defined.

3. STATUTES—*Duty of Court to Sustain.* It is the duty of the courts
to uphold a statute, unless clearly opposed to some provision
of the fundamental law.

*Error to Denver District Court, Hon. James H. Teller,
Judge.*

Mr. E. E. WHITTED and Mr. THOS. R. WOODROW, for
plaintiff in error.

Mr. JO. A. FOWLER, for defendants in error.

Mr. Justice Allen delivered the opinion of the court:

THIS was an action brought by the Chicago, Burlington
& Quincy Railroad Company to recover a portion of the
"Special School Tax," paid by the company under protest
to the treasurer of Yuma County. The school board of
the defendant, School District No. 1, certified to the board
of county commissioners of Yuma County a twenty mill
levy, the board made the same, and the assessor used the
levy in extending taxes against the property of the plaintiff
railroad company.

The levy was certified and made under chapter 206 of
the Session Laws of 1911, being an act entitled "An Act
to amend Section Five Thousand Eight Hundred and
Ninety-five (5895) of the Revised Statutes of Colorado,
1908."

The complaint was drawn upon the theory that this act

is one for raising revenue, within the meaning of section 31 of article V of the Constitution of the state of Colorado, and the bill having originated in the senate, the act is unconstitutional and void, because enacted in violation of the above constitutional provision.

A demurrer to the complaint was sustained, and the plaintiff electing to abide by the complaint, judgment was entered for defendants. Plaintiff brings the case here upon error. The sole question presented by the assignments of error and briefs of counsel is the constitutionality of chapter 206 of the Session Laws of 1911.

Chapter 206 of the Session Laws of 1911, the act in question, was an act amending section 5895, Revised Statutes of 1908. That section was a part of the school laws of the state, which are embraced in chapter CXXIV of the Revised Statutes of 1908. These laws were enacted in obedience to section 2 of article IX of the Constitution, which is as follows:

"The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. One or more public schools shall be maintained in each school district within the state, at least three months in each year; any school district failing to have such school shall not be entitled to receive any portion of the school fund for that year."

The first legislation pursuant to the above constitutional requirement was chapter XCII of the General Laws of 1877 entitled "Schools," the same consisting of an act entitled "An Act to establish and maintain a system of free schools," approved March 20, 1877. (G. L. 1877, pp. 807-842, secs. 2447-2544.)

The section of the act of 1877 corresponding in its subject matter to section 5895, R. S. 1908, was section 66. This section, among others, was amended by the Laws of 1881, p. 211. The School Laws were carried into the Gen-

eral Statutes of 1883, under chapter 92 thereof, and section 66 became section 67.   (G. S. 1883, sec. 3062.)

The act was again amended in 1887 by an act entitled "An Act to amend Chapter 92 of the General Statutes entitled 'Schools.' "   (Session Laws 1887, p. 379.)   The act of 1887 among other things amended section 67, and that section as amended became section 5895, R. S. 1908.

As a first step in the consideration of the case at bar, it is proper to determine whether or not the act of 1877, above mentioned, was an act "for raising revenue" within the meaning of section 31 of article V of the state Constitution, which reads:

"All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose amendments, as in the case of other bills."

The main purpose of the act of 1877 was "the establishment and maintenance of a thorough and uniform system of free public schools throughout the state."   The provisions which it contained for the levy and collection of taxes was incident to the main purpose, but such provisions were necessary in order that the main purpose might be carried out and a school system established and maintained.

With respect to the taxation provisions being incident to the main purpose of the statute, the act of 1877 is analogous to many laws, both state and federal.

In the case of *Assurance Co. v. Clayton,* 54 Colo. 256, 130 Pac. 330, the court in speaking of chapter 193 of the Session Laws of 1907, which was an insurance act, used the following language:

"A bill designed to accomplish some well defined purpose other than raising revenue, is not a revenue measure. Merely because, as an incident to its main purpose, it may contain provisions, the enforcement of which produces a revenue, does not make it a revenue measure.   Revenue bills are those which have for their object the levying of taxes in the strict sense of the words.   If the principal object is another purpose, the incidental production of revenue growing out of the enforcement of the act will not make it a bill for raising revenue."

In the case of *Geer v. Board of Commissioners,* 97 Fed. 435, 38 C. C. A. 250, the United States Circuit Court of Appeals had under consideration, among other things, the constitutionality of the Act of 1889 (Session Laws, Colo., 1889, pp. 31, 32), authorizing counties to refund their judgment and bonded debts, which act provided for certain levies for carrying out the purposes of the act. To the contention that the act, having originated in the senate, was void because it was a bill "for raising revenue," within the meaning of sec. 31, art. V, of the state Constitution, the court replied:

"But a bill for raising revenue, within the meaning of this provision of the Constitution, is one which provides for the levy and collection of taxes for the purpose of paying the officers and of defraying the expenses of the government. This act was not of that character. Its main purpose was to authorize certain quasi municipal corporations to refund their debts. The provisions for the levy and collection of taxes which it contained were mere incidents to the general refunding legislation which it carried. These provisions raise no revenue for the government, but, on the other hand, the act expressly provided that the moneys derived from the levies made under it should not be appropriated to pay the officers of the state or of the county, or to defray the expenses of governing the people.   *   *   *   *"

The language quoted from the above cases is in accord with numerous authorities. *U. S. v. Mayo,* 26 Fed. Cas. No. 15,755; *U. S. v. James,* 26 Fed. Cas. No. 15,464, 13 Blatch. 207; *Northern Counties Trust v. Sears,* 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188; *U. S. v. Norton,* 91 U. S. 569, 23 L. Ed. 454; *Twin City Bank v. Nebeker,* 167 U. S. 196, 17 Sup. Ct. 766, 42 L. Ed. 134; *Fletcher v. Oliver,* 25 Ark. 289; *Commonwealth v. Bailey,* 81 Ky 395; 1 Story on the Constitution (5th Ed.) 880; 36 Cyc. 946.

The case of *Fletcher v. Oliver, supra,* contains the following expression:

"There are many laws that provide for raising money

by taxation that are not revenue laws. The law under which the city derives the power to tax the property within its limits, originated in the senate. The law organizing schools, and permitting the levy of a tax for that specific purpose, originated in the senate, and no one ever dreamed of calling them revenue laws."

Under the authorities cited (and there appear to be none to the contrary) there can be no question but that the act of 1877, providing for the establishment and maintenance of a system of free schools, was not an act "for raising revenue" within the meaning of section 31 of article V of the state Constitution. The senate, therefore, had the power to originate the bill which became the act of 1877. If the senate had the power to originate a general and complete statute, as was the act of 1877, there does not appear to be any good reason why the senate cannot originate a series of acts when each is but a part of the complete and general law and all taken together are, and amount to the same, as one complete and general act.

It is true that in a general act, as in the Act of 1877, the provisions for the levy and collection of taxes are incident to the main purpose of the statute, while in a special act such provisions may be all that is contained in the same. But it appears from most of the authorities cited that the general act under consideration in those cases was upheld, not only because the taxation features therein were incident to the main purpose of the act, but also because the taxation provided for was not that kind of taxation which was for paying officers or defraying the expenses of the government.

The act of 1911, in controversy, considered by itself, does not provide for any other taxation than that for the support and benefit of a school system. So far as pertinent to the subject under consideration, the act reads as follows:

"5895. On or before the day designated by law for the commissioners of each county to levy the requisite taxes for the then ensuing year, the school board in each district

shall certify to the board of county commissioners a statement showing the aggregate amount, which, in the judgment of said school board, it is necessary to raise from the taxable property of said district, to create a special fund for any of the purposes specified in section 51 of this chapter; said statement shall also show the items composing said aggregate and the purpose to which it is intended to devote each sum so itemized. It shall thereupon be the duty of the county commissioners to levy, at the same time that other taxes are levied, such rate, within the limits allowed by law, as will produce the aggregate amount so certified. The amount of such special tax, which shall be assessed to each taxpayer of such district, shall be placed in a separate column of the tax book, which shall be headed 'Special School Tax,' *Provided,* in the case of districts of the third class no higher rate than twenty mills per dollar shall be levied.  *  *  * ''

Section 51 referred to, is section 5925, R. S. 1908, which enumerates the powers of school boards who are required, among other things, to employ and pay teachers, to provide school furniture and equipment, and to provide books for indigent children, to repair school buildings, and, when necessary, to rent, build or remove school houses.

To use the language of the court in the case of *Assurance Co. v. Clayton, supra,* does the foregoing statute have for its object "the levying of taxes in the strict sense of the words?"  Or, in the language of the opinion in *Geer v. Board, supra,* is the levy provided for "defraying the expenses of the government?"

The case of *Com. v. Bailey,* 81 Ky. 395, 399, contains the following in the opinion:

"The principle underlying this provision of the Constitution is founded on the ground that the people are bound to pay the taxes to support the government in consideration of protection to their lives, liberty, and property; hence, the power of taxation was placed in the hands of the popular branch of the legislature as a means of security to the people, from whom its members are selected,

against exactions by taxation for other than strictly governmental purposes.

"This view excludes from the comprehension of this constitutional clause such bills as appropriate money to or from the treasury, raised from the people in consideration of other benefits and services than protection of their lives, liberty, and property."

The Act of 1911, in controversy, does not provide for any levy or taxation for paying any public officers, or for aiding in or securing protection of life, liberty and property.

The levy and collection of taxes for the maintenance of a school system is not taxation for "defraying the expenses of the government" as that expression is used in the opinion in *Geer v. Board, supra,* or "for the service of the government," as the same idea is expressed in *U. S. v. Mayo, supra.* The making of a tax levy for school purposes is not "levying of taxes in the strict sense of the words," as these words are used in the case of *Assurance Co. v. Clayton, supra,* and other cases:

The meaning of the term "government" is so commonly understood that to define the same does not appear to be necessary, yet the term, as used in the cases cited, may be defined as "the exercise of authority in the administration of the affairs of a state, community, or society; the authoritative direction and restraint exercised over the actions of men in communities, societies, or states." *Peo. v. Pierce,* 81 Miss. 83, 41 N. Y. S. 858; 4 Words & Phrases, 3138.

If it were conceded that reasons could be adduced for holding the act of 1911, a revenue measure within the meaning of section 31 of article V of the state Constitution, yet since it is possible, right, and proper to uphold the act under the authorities cited, the latter is clearly the duty of this court.

"It is an elementary principle that where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be uncon-

stitutional and by the other it would be valid, the court should adopt the construction which would uphold it." 6 Ruling Case Law 78, sec. 77.

We are required to uphold legislation, unless its constitutionality appears beyond all reasonable doubt. *Farmers' Independent Ditch Co. v. Agr. Ditch Co.,* 22 Colo. 513, 528, 45 Pac. 444, 55 Am. St. Rep. 149; *Denver City v. Knowles,* 17 Colo. 204, 211, 30 Pac. 1041, 17 L. R. A. 135. An act is to be overthrown only when it is clear and unquestioned that it violates the fundamental law. *People v. Rucker,* 5 Colo. 455, 458; *People v. Goddard,* 8 Colo. 432, 437, 7 Pac. 301; *Munn v. People of the State of Illinois,* 94 U. S. 113, 24 L. Ed. 77. These cases are quoted from, with approval, in *Consumers' League v. C. & S. Ry. Co.,* 53 Colo. 54, 58, 125 Pac. 577, Ann. Cas. 1914A, 1158. This court in *People v. Commissioners,* 12 Colo. 89, 93, 19 Pac. 892, having for determination the constitutionality of the Act of 1887, of which the Act of 1911 in controversy is amendatory, used the following language:

"The doctrine is elementary that no act of the general assembly should be declared unconstitutional unless it is clearly and palpably so. * * *

"In a matter so important as the maintenance of public schools, the courts should incline to uphold, rather than to defeat, the action of the officers charged with the execution of the laws."

Upon the grounds hereinbefore stated, we hold that the Act of 1911 in controversy, the same being chapter 206 of the Session Laws of 1911, is not an act "for raising revenue," within the meaning of section 31 of article V of the state Constitution, and is therefore constitutional and valid.

The complaint was based upon the statute of 1887, or section 5895, R. S. 1908, as it stood prior to the Act of 1911 amending the same, and was framed upon the theory that the Act of 1911 was unconstitutional and void as being a revenue measure which originated in the senate. The statute of 1911 being constitutional and valid, the demurrer

to the complaint was properly sustained.   The judgment is affirmed.

*Affirmed.*

White, C. J., and Bailey, J., concur.