## AMERICAN TELEPHONE & TELEGRAPH COMPANY OF MISSOURI v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

### Division One, March 28, 1907.

1. **CONDEMNATION: Corporation's Property.** Corporations, under the Missouri Constitution, hold their property under the same guaranty of inviolability that individuals do—no greater, no less. As the individual holds his property subject to the right of eminent demain, so does the corporation.

2. ————: **Telephone Company.** The State has delegated to a telephone and telegraph company the right of eminent domain.

3. ————: ————: **Over Railroad's Easement.** A telephone and telegraph company has by statute been given the right to condemn and appropriate an easement along the right of way of a railroad, to erect and maintain its poles and wires—the right to appropriate, however, being rigidly limited to such use as shall not materially interfere with the uses the railroad corporation holding the property is authorized to put it to, or does put it to, by law.

4. ————: ————: ————: **Determination of Expediency: Interference.** When an easement for a public use is to be condemned in an existing easement for a public use, the new easement (not being superior to the former) must not destroy or be materially detrimental to the prior use. But with that limitation, when the Legislature delegated to telephone and telegraph companies the power of exercising the right of eminent domain in their own behalf it granted to them by necessary implication (barring malice and fraud) the discretion of selecting the route. The company is to determine the necessity and propriety of exercising the delegated right of eminent domain, and that right, in the absence of bad faith, a malicious motive, or that the taking of a particular route would entail a great loss which might readily be avoided, will not be interfered with by the courts.

5. ————: ————: ————: ————: **Extraneous Matters: Question of Propriety, etc.** Issues relating to the good taste, the expediency and propriety of plaintiff in intruding itself on defendant's right of way, instead of buying or condemning a right of way over other lands, or using the public roads as it (a telephone and telegraph company) has the right to do under the statute, are extraneous to the condemnation case.

6. ————: Public Corporation: Destroying Easement. A public corporation cannot condemn a secondary easement for a public use which destroys or materially interferes with the public use of the first easement, especially where the second easement is not a public use superior to the first.

7. ————: ————: Public Use: Determined by Judge. Whether or not the use to which the proposed easement is to be put is a public use, is to be determined by the court, and not by the jury, whether the character of the use is plainly ascertainable from the petition alone, or from both the petition and evidence. And that determination is made by overruling a demurrer to the petition, or an answer that amounts to a demurrer, or by overruling a demurrer to the evidence.

8. ————: ————: ————: ————: Demurrer to Petition. Where the petition shows the Western Union Telegraph Company has a line of poles and wires along one side of defendant railroad's right of way, and the easement plaintiff telephone and telegraph company seeks to condemn is a corresponding right on the other side, and where a condition of things is shown by the petition in the proposed distance of plaintiff's poles from defendant's track, in the size of the poles, in guys, braces, crossarms, pins, wires and insulators, and in reservations to defendant of the right to change the grade, to take dirt, stone and other material, from which it is not apparent, as a matter of law, that the public use in defendant's easement will not be destroyed or materially interfered with by plaintiff's use, the court should overrule a demurrer to the petition, and thereby determine judicially by an inspection of the pleadings that the proposed use is a public use.

9. ————: ————: ————: Description. While the property to be appropriated must be definitely located and described in the petition and judgment, yet where the location and description are as definite as the subject-matter will permit, they are sufficient.

10. ————: ————: ————: ————: Reservations: Run With Land. Reservations, stipulations, promises and limitations made and placed on the easement by the petition and judgment, may be likened to covenants running with land, and do run with the easement, and are binding on plaintiff and its successors.

11. ————: ————: ————: ————: Flexibility. The statutory rule limiting the right under the second appropriation to such use as shall not materially interfere with the uses imposed on the primary easement, demand a flexibility in the petition and judgment that will subserve the useful purpose constituting the life

of the statute; and a lack of absolute definiteness in location and description is really but another name for this flexibility.

12. ——: ——: ——: **Measure of Damages: Confusing Instruction.** It is not reversible error to refuse an instruction offered by defendant in a condemnation case on the measure of damages, which is vague and argumentative and as likely to confuse rather than enlighten the jury.

13. ——: ——: ——: ——: **Nominal: Instruction.** An instruction in a condemnation case, which told the jury that defendant's damages were nominal, was reversible error, under the evidence in this case, where defendant had gone to great cost in grading and clearing of timber its right of way, and where if plaintiff is given an easement to construct a telephone and telegraph line of poles and wires along defendant's right of way, defendant's right to construct another like line is gone, and where the expense of keeping the right of way free from weeds, bushes and inflammable matter is laid on defendant.

14. ——: ——: ——: ——: ——: **False Measures.** The fact that defendant railroad company will be benefited by competition in the transmitting of telegrams if plaintiff's telegraph line is constructed on and along the right of way, is no reason why plaintiff should not pay damages for the easement. There is no reason why plaintiff should confer benefits on defendant against its will. Neither is the fact that defendant must keep its tract fenced and free from inflammable matter, and would have to do those things whether or not plaintiff is given the easement, any reason for saying defendant's damages are nominal.

15. —— ——: ——: ——: **True Measure.** The measure of damages is the amount the right of way of the railroad company, for railroad purposes, is diminished in value by the proposed easement of the telegraph and telephone company.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*Franklin Ferriss, Joseph H. Zumbalen, Martin L. Clardy, Elencious Smith* and *Louis F. Dinning* for appellant.

(1) (a) Property devoted to a public use cannot be condemned for another public use that will ma-

terially interfere with the prior public use. Pennsylvania R. Co.'s Appeal, 93 Pa. St. 150; Pittsburg J. R. Co.'s Appeal, 122 Pa. St. 511; Railroad v. Railroad, 124 Mass. 368; N. W. Tel. Ex. Co. v. Railroad, 76 Minn. 334; R. S. 1899, sec. 1272; Railroad v. Depot Co., 125 Mo. 82. (b) Whether the proposed use will materially interfere with the prior use is a judicial question, upon which the defendant is entitled to a hearing and the judgment of the court. Railroad v. Railroad, 94 Mo. 535; Railroad v. Telegraph Co., 30 Col. 133; In re Railroad, 34 Minn. 227; Railroad v. Telegraph Co., 58 C. C. A. 198; Telegraph Co. v. Railroad, 30 Ind. App. 654. (c) If, in such case, the defendant, by timely answer or objection, questions the right to make the second appropriation on the ground that it will materially interfere with the prior use, the judgment of condemnation will be void, unless it finds said issue in the petitioner's favor. Railroad v. Cable Co., 68 Ohio St. 306; Ellis v. Railroad, 51 Mo. 200. (2) The property sought to be appropriated, or easement proposed to be acquired, must be definitely located and described in the petition and judgment. A description which leaves the location of the easement to the subsequent determination of the petitioner, is obviously insufficient. R. S. 1899, sec. 1264; Railroad v. Fowler, 113 Mo. 458; Railroad v. Telegraph Co., 173 Ill. 508. (3) In proceedings to condemn an easement for the erection and maintenance of a telegraph line along the right of way of a railroad, the measure of compensation is the amount which the right of way of the railroad company is diminished in value by the proposed easement of the telegraph company. Railroad v. Telegraph Co., 68 Ohio St. 306; Railroad v. Telegraph Co., 173 Ill. 508; Railroad v. Telegraph Co., 120 Ga. 268; Railroad v. Telegraph Co. (Miss.), 45 L. R. A. 223. The obligations imposed by law upon a railroad company to care for and maintain its right of way free from underbrush, etc., and the cost and expense to the railroad company

of putting in condition its right of way, are elements to be considered in estimating the damages. Railroad v. Telegraph Co., 68 Ohio St. 306; Telegraph Co. v. Railroad, 49 La. Ann. 1270; Telegraph Co. v. Railroad, 104 Fed. 623.

*Phillips & Phillips* and *Walter J. Terry* for respondent.

(1) (a) Property devoted to a public use can be condemned for another public use, even though the second taking interferes with or destroys the prior use, if express legislative authority be granted therefor, subject to this exception: "That it cannot be taken to be used for the same purpose in the same manner." Lewis, Em. Dom. (2 Ed.), 276. (b) The above proposition is immaterial in this case since the pleadings, evidence and facts show that there can be no material interference. Lewis, Eminent Domain, sec. 268b at p. 647, note 25; Railroad v. S. W. T. & T. Co., 60 L. R. A. 151; Telegraph Co. v. Railroad, 30 Ind. App. 654; In re Railroad, 34 Minn. 230; Railroad v. Postal Telegraph Co., 173 Ill. 519; Railroad v. Tel. Co., 121 Fed. 285, 58 C. C. A. 207; Railroad v. Tel. Co., 30 Colo. 144. (c) There is express authority in this State for condemning the property in question under the facts and pleadings. R. S. 1899, secs. 1252, 1272; Railroad v. S. W. T. & T. Co., 60 L. R. A. 150; Railroad v. Telegraph Co., 68 Ohio St. 317. (d) General authority to condemn would authorize condemnation proceedings under the facts and pleadings in this case. Lewis, Em. Dom., sec. 269, p. 647, note 25; Railroad v. Tel. Co., 58 C. C. A. 207; Railroad v. Telegraph Co., 30 Ind. App. 654; Tel. Co. v. Railroad, 23 Utah, 474, 7 Am. Elec. Cases, 421; Railroad v. Railroad, 111 Cal. 231, 43 Pac. Rep. 605; Railroad v. Tel. Co., 30 Colo. 144. (e) If the question as to whether the proposed use will materially interfere with the

prior use is a judicial question upon which the defendant is entitled to a hearing and judgment of the court, it has had such hearing and the judgment fully protects it. Railroad v. Railroad, 94 Mo. 535; Railroad v. S. W. T. & T. Co., 58 C. C. A. 207; Railroad v. Postal Telegraph Co., 173 Ill. 519; Railroad v. Postal Telegraph Co., 24 So. 411; Railroad v. Postal Tel. Co., 120 Ga. 277; Railroad v. Telegraph Co., 30 Colo. 133. (f) When express authority is granted for the second condemnation, the question as to whether this will materially interfere with the prior use is a defense, and the burden of showing this is on defendant. Railroad v. S. W. T. & T. Co., 58 C. C. A. 208; Railroad v. Telegraph Co., 30 Colo. 142; Railroad v. Telegraph Co., 24 So. 411; Railroad v. Railroad, 94 Mo. 542. (g) The court, under the pleadings in this case, could take judicial cognizance of the fact that the proposed line would not interfere with the railroad company. Railroad v. Tel. Co., 24 So. 411; Railroad v. Telegraph Co., 60 L. R. A. 151; Railroad v. Telegraph Co., 173 Ill. 519; In re Railroad, 34 Minn. 230; Railroad v. Callaghan, 50 Ill. App. 676; Globe Printing Co. v. Stahl, 23 Mo. App. 451; Davis v. Hanley, 12 Ark. 645; Railroad v. Dey, 82 Ia. 312, 48 N. W. 98. (2) The property sought to be appropriated, or easement proposed to be acquired, was definitely located and described in the petition and judgment. The description did not leave the location of the easement to be determined by the petitioner. R. S. 1899, sec. 1264; Railroad v. Fowler, 133 Mo. 458; Railroad v. Telegraph Co., 173 Ill. 516; Railroad v. Telegraph Co., 58 C. C. A. 203; Telegraph Co. v. Railroad, 23 Utah 479; Railroad v. Telegraph Co., 24 So. 408; Tel. Co. v. Railroad, 111 Fed. 842. (3) The damages under the pleadings and evidence in this case are nominal. (a) The burden of showing the amount of damages is on the defendant. Lewis, Em. Dom. (2 Ed.), sec. 426; Railroad v. Rhea, 44 Ark. 258. And having shown no substan-

tial damages, the judgment for nominal damages will be sustained. Lewis, Em. Dom. (2 Ed.), sec. 489, at p. 1088; Railroad v. Railroad, 105 Ill. 121; Railroad v. Tel. Co., 24 So. 412. (b) Nominal damages alone are recoverable in such condemnations. Railroad v. Telegraph Co., 101 Tenn. 62, 41 L. R. A. 403; Telegraph Co. v. Railroad, 23 Utah 474, 7 Am. Elec. Cas. and note at p. 426. (c) The jury awarded substantial damages, notwithstanding the court's instructions, and appellant cannot complain. Railroad v. Tel. Co., 76 Miss. 731; Tel. Co. v. Railroad, 104 Fed. 623, affirmed in 111 Fed. 842; Railroad v. Tel. Co., 173 Ill. 508; Railroad v. Tel. Co., 56 S. W. 201; Railroad v. Tel. Co., 120 Ga. 268; Railroad v. Tel. Co., 24 So. 408. (d) Under the rule of damages adopted by the courts most favorable to appellant, it has received the full measure thereof. Railroad v. Tel. Co., 49 La. Ann. 58, as modified in same vol., at p. 1270, and as further limited in Railroad v. Railroad, 51 La. Ann. 1605, 40 So. 627. (4) The advantages to the condemning party and the cost of clearing and ditching right of way cannot be considered in estimating damages. Railroad v. Telegraph Co., 120 Ga. 278; Railroad v. S. W. Tel. & Tel. Co., 56 S. W. 201; Railroad v. Postal Tel. Co., 25 So. 307, 76 Miss. 748.

LAMM, J.—Plaintiff is a domestic telephone and telegraph corporation and seeks to condemn an easement for the erection and maintenance of poles and lines in the right of way of defendant railway company from the city of Poplar Bluff in Butler county to the southern boundary of Missouri, a distance of twenty-one miles. The proceeding progressed through the statutory stages of the filing of plaintiff's petition in the office of the clerk of the circuit court of Butler county, the entry of an order in vacation by the Honorable James L. Fort, judge of said court, appointing the day and place where said petition would be heard

and ordering service of summons upon defendant to be and appear at said time and place, the appearance of defendant, the filing by it of what is called in the record "its answer and objections," the order appointing commissioners notwithstanding, the making and filing of a report by said commissioners awarding defendant damages of $10 per lineal mile, notice to defendant thereof and the filing within ten days thereafter by defendant of its exceptions to said report, a jury trial, a verdict awarding defendant $315 damages, followed by a judgment, motions for a new trial and in arrest by defendant and defendant's appeal here.

Attending to the record essential to understanding the questions presented here, the petition is as follows:

"The petition of the American Telephone and Telegraph Company of Missouri, a corporation, respectfully shows: that it is a corporation created and existing under and by virtue of the laws of the State of Missouri for the purpose of doing a general telephone and telegraph business, and is by its charter authorized to construct and operate a system of telephone and telegraph lines for the use of the general public.

"That the defendant, St. Louis, Iron Mountain and Southern Railway Company, is a corporation duly organized under and by virtue of the laws of the State of Missouri, for the purpose of doing a general railroad business and owns and operates a railroad from the city of Texarkana, in the county of Miller, and State of Arkansas, to the city of St. Louis, in the State of Missouri; its main line running through the county of Butler, in the State of Missouri, in a notherly and southerly direction; and that the said railway company is the owner of, and in possession of the easement or right of way upon which its said railroad is constructed, the right of way extending fifty feet in

each direction from the center of its main track and being continuous from the State line between the State of Arkansas and Missouri, said line being the southern boundary line of Butler county, Missouri, and through said Butler county to the city of Poplar Bluff, in said county, a distance of about twenty-five miles.

"The said railroad is a public highway, and post road, and is being operated for the purpose of the carriage of freight and passengers as a common carrier for hire; and the carriage of the United States mail, subject to the laws of the State of Missouri, and of the United States.

"That said railroad is, through Butler county, Missouri, a single-track road, constructed at or near the center of its said right of way, and is about four feet eight and one-half inches wide, with switches, side-tracks, spurs, turn-outs, turn-tables, water tanks, station houses, section houses, etc., as are necessary to carry on its said business as a railroad as aforesaid.

"That plaintiff desires and intends to construct a line of telephone and telegraph along the line of defendant's railroad from the State line between the States of Arkansas and Missouri through a portion of Butler county, Missouri, to the southern boundary line of the city of Poplar Bluff, in said Butler county, Missouri.

"The purpose and the intention of the plaintiff herein being to construct its telephone and telegraph line along, over and across the right of way of said railway company, as follows, by placing its telephone and telegraph poles along, over and across said right of way; beginning on the right of way of said railway company at the State line between the States of Arkansas and Missouri, on the side opposite the side now occupied by the pole line of the Western Union Telegraph Company thirty-five feet from the center line between the rails of the main track and continuing at said distance where the width and condition of the

right of way of said defendant railroad company will permit of going so far, and not nearer than fifteen feet in any event; and not nearer than fifteen feet from the center line between the rails of all side-tracks, switches, turn-outs, etc., where the width and conditions and location of said side-tracks, switches, turn-outs, etc., will permit of going so far, to the southern boundary line of the city of Poplar Bluff in Butler county, Missouri, a distance of about twenty-five miles.

"That the plaintiff will construct its line of poles and wires of the best material and upon the most improved method of construction, with poles not less than twenty-five feet in length, set about five feet in the ground, said poles to be not less than six inches in diameter at the small end, and not less than fifteen inches in diameter at the base or large end, said poles to be firmly placed in the ground so as to be held securely in position, and at all curves will be so guyed and braced as to resist the tension of the wires, and upon said poles will be placed suitable cross-arms, pins, and insulators, upon which will be attached at or near the upper end of said poles metallic wires of suitable material and sufficient numbers to enable the plaintiff or its patrons to promptly and properly transmit all intelligence by telephone or telegraph, that may properly be transmitted over the same, said poles to be placed as to average not less than thirty-five to the mile. And in cases where it may be necessary to cross the tracks of the said railroad, its poles to be of sufficient height and distance apart to raise all wires clear above other wires or other structures rightfully upon said right of way, and at all crossings of said tracks, its wires will be so strung as not to come nearer than twenty-five feet from the top of the rails of the defendant company.

"That the plaintiff will so set its poles as not to

interfere with any ditch, drain or culvert, or other work or structure of the defendant.

"That in the event the defendant shall at any time desire to change the location of its tracks, or to construct new tracks, or side-tracks, or to construct new depots, or other buildings, or change the location of the same, where any of plaintiff's poles or wires are located upon defendant's right of way, the plaintiff hereby consents and agrees to remove its said poles and wires at said points to any other part of the defendant's right of way adjacent thereto, designated by the defendant upon due and reasonable notice in writing to that effect, and at the expense of the plaintiff. And the plaintiff expressly agrees and consents that the defendant may take from that part of the right of way over which its wires may be strung and on which its poles are set all the dirt, gravel, sand, stone, water and other material of every kind and character that it may need from time to time; and in the event said right of way is cut down, or the grade thereof changed in any manner, that the plaintiff agrees to reset its poles and resetting its wires at its own expense, upon due and reasonable notice in writing, to that effect, so as to make them conform to such new grade.

"The plaintiff expressly agrees and consents that it has no right to fence any of said right of way, nor in any manner exclude the defendant therefrom.

"The plaintiff consents that it shall assume all the risks to its poles, wires, insulators, cross-arms, etc., incident thereto, and will hold the defendant harmless from any damages to any of plaintiff's property occasioned by the burning of grass and undergrowth upon said railroad right of way.

"That the erection of plaintiff's said telephone and telegraph line as hereinabove set forth and asked will in no kind of way or manner interfere with the defendant company's use, or occupation of its said right of way, or in the operation of its cars or trains

along its said main line or its side-tracks, switches, turn-outs, turn-tables, etc.

"And your petitioner further says that it desires to begin the construction and erection of its said line of telephone and telegraph at once.

"And your petitioner further says that it and the defendant, who are each residents of the State of Missouri, cannot agree upon the proper compensation to be paid for said easement along and over said right of way as hereinabove set out, or any interest therein, which it seeks to acquire, although it has endeavored so to do.

"Wherefore, the premises considered, your petitioner prays for the appointment, by said court, or by the judge thereof in vacation of three disinterested freeholders, residents of Butler county, as commissioners, or of a jury, to ascertain and assess the damages which defendant may sustain as the just compensation to which it may be entitled in consequence of the construction, maintenance and operation of said telephone and telegraph line and appurtenances as aforesaid, and the use and occupation therefor."

It will not be necessary to reproduce the answer filed on the return day of the summons. Suffice it to say that defendant appeared and answered not alone by way of allegation, but by way of protest and objection also. Under eleven heads it thereby challenged the sufficiency of the petition, because it did not seek to condemn any particular piece or parcel of land whereon to erect plaintiff's poles; because the laws of Missouri do not authorize the appointment of commissioners to assess damages for a license or permission to erect plaintiff's poles on the right of way of defendant; because the property sought to be appropriated is shown by the petition to be the right of way of defendant, and the laws of Missouri do not authorize the condemnation of defendant's right of way or any part thereof for such a purpose; because the pe-

tition does not state there is any public necessity for the plaintiff to invade defendant's right of way and appropriate the use thereof for a telephone and telegraph line, and plaintiff can just as easily go outside defendant's right of way; because the whole one hundred feet of defendant's right of way is absolutely necessary for its use in the operation of its trains of cars, and to permit plaintiff to invade said right of way and to erect poles thereon would endanger the lives of defendant's employees and the traveling public and increase defendant's hazards in operating its trains; and because it appears on the face of the petition that the erection of plaintiff's telegraph poles on defendant's right of way will interfere with defendant's management of its cars and with the public having business at its various depots. Defendant also denied every allegation in plaintiff's petition not admitted.

The bill of exceptions contains the following: "The reasons and answers aforesaid were disregarded and overruled by said judge, and thereupon, at the time and place aforesaid, he appointed three commissioners (naming them) by his order in writing, which order of appointment is in words and figures as follows: [Here follows the order of appointment.] To the action of the judge in overruling defendant's reasons and answers why he should not appoint commissioners, and to the appointment of said commissioners, the defendant duly objected and excepted at the time."

Within due time after the commissioners reported and notice of that report was served upon defendant, it filed its written exceptions under twenty-eight heads. Said exceptions may be divided into two classes. The first class but restate, varying in phraseology and amplification, the averments and protests of said answer; the other class of exceptions are directed to the insufficiency of the damages allowed (averring the damages are $300 per mile)—defend-

ant's exceptions closing with a prayer that the court set aside the order appointing the commissioners and set aside the report and finding of said commissioners "and make such finding and judgment in the premises as right and justice may require."

No formal ruling was made on these exceptions, but a trial to a jury followed as of course. At that trial plaintiff introduced no evidence whatever. Defendant did introduce evidence; and at its close asked the court to instruct the jury that under the pleadings and evidence they should find for defendant. This instruction was refused, defendant excepting. Plaintiff prayed and was allowed the following instruction: "The court instructs the jury that they will find for the defendant, the St. Louis, Iron Mountain & Southern Railway Company, and assess its damages at a nominal sum." To the giving of this instruction defendant objected and saved an exception. Defendant asked and was refused two instructions (saving its exception to the ruling of the court), as follows:

(2) "The court instructs the jury that the defendant is entitled to recover all loss and damage which, under the evidence, they may believe has been or will be sustained by the defendant company by reason of injury to its title or right in the land occupied by its road, by reason of the appropriation by plaintiff company of that portion of defendant's right of way sought to be appropriated taking into consideration the position, existing fences, or structures, of any kind, connected with its operation as a railroad upon the land, or changes in its surface required by law, or in fact necessary to be made by said defendant company in order to accommodate its own land to any new condition, or to any new improvement which, under the evidence, they may believe defendant intends to make upon such land for the purpose of economically and safely transporting passengers and freight over its railroad, and in estimating such damages they

will further take into consideration any increased difficulty of access to the railroad of the defendant company and any impairment of its capacity, for doing business, which they may believe under the evidence said defendant company will sustain by reason of the appropriation by plaintiff company of that portion of the right of way herein sought to be appropriated."

(3) "The court instructs the jury that defendant, St. Louis, Iron Mountain & Southern Railway Company, is a common carrier engaged in the transportation of freight and passengers over its line of road and over its right of way involved in this proceeding, and that it is the duty of said common carrier to transport such freight safely and such passengers with the highest possible degree of skill and care and to use its right of way, track and structures thereon, as well as all of its other appliances, in such a way as to so transport such passengers and freight, and the jury are further instructed that in carrying out such transportation it is the privilege and duty of said defendant to use all of its right of way keeping the same free from any obstructions that would interfere with such transportation of passengers and freight in the manner hereinbefore mentioned, as well as to provide all appliances and improvements that may be necessary to that end, and if the jury believe, under the evidence, that the use by plaintiff, the American Telephone & Telegraph Company of Missouri, of that portion of the right of way of said defendant by it sought to be condemned and appropriated in this proceeding, would, or that any part thereof would, interfere with the use by said defendant company to which, under the duty devolved upon it as hereinbefore mentioned, it puts the right of way, or any use thereof which, under the evidence, the jury may believe said defendant company intends to put its right of way from the State line between the States of Arkansas and Missouri, and the southern boundary line of the city of

Poplar Bluff, in Butler county, State of Missouri, they will find for the defendant.''

The jury having returned a verdict of $315, plaintiff paid said sum to the clerk of said court for the benefit of defendant, and the court rendered and entered a judgment on said verdict, which (omitting the formal part) is as follows:

"It is therefore considered by the court that, whereas, The American Telephone and Telegraph Company of Missouri, plaintiff herein, has filed its petition in this court against the St. Louis, Iron Mountain and Southern Railway Company for the purpose of condemning a right of way as follows: Beginning at the right of way of said railway company at the State line between the States of Arkansas and Missouri, on the western side thereof and on the side opposite the side now occupied by the pole line of the Western Union Telegraph Company, thirty-five feet from the center line between the rails of the main track and continuing at said distance and on said side of railroad where the width and conditions of the right of way of said defendant will permit of going so far, and not nearer than fifteen feet in any event; and not nearer than fifteen feet from the center line between the rails of all side-tracks, switches, turn-outs, etc., where the width, conditions and location of said side-tracks, switches, turn-outs, etc., will permit of going so far, to the southern boundary line of the city of Poplar Bluff, in Butler county, Missouri, a distance of about twenty-one miles, and whereas it appears to the court that the plaintiff has the right to condemn such right of way by paying the damages incurred thereby, and that the plaintiff, the American Telephone and Telegraph Company of Missouri, has expressly consented to allow the defendant railway company the right to remove all dirt, gravel and stone from the right of way of said plaintiff that it may need from time to time for the purpose of improving its tracks

and roadbed, and other necessary purposes, and that in the event of said dirt, gravel and stone being removed between the poles of the plaintiff company, plaintiff thereby agreed to reset the poles at its own expense upon reasonable notice; and whereas, it further appears to the court that the plaintiff expressly agrees at its own expense to move its poles and wires to any other portion of the defendant's right of way designated by the defendant adjacent thereto, upon reasonable notice, should the defendant by erection or building of any tracks, water tanks, depots or other structures need the said right of way so occupied by the said plaintiff, and that plaintiff also has agreed to hold defendant railway company harmless for any damages to the poles, wires, cross-arms and other appurtenances of the plaintiff occasioned by fires set out upon said right of way.

"It is therefore ordered and adjudged by the court that the defendant do have and recover from the plaintiff, the American Telephone and Telegraph Company of Missouri, the sum of three hundred and fifteen dollars and all the costs of this suit expended by it.

"It is further considered, ordered and adjudged by the court that the right of way sought and prayed for by the plaintiffs herein, upon payment of said damages and costs be, and the same is hereby granted to the plaintiff, and the plaintiff shall have the right to set its poles and string its wires in the mode and manner prayed for herein.

"It is furthed ordered that the plaintiff, in erecting its poles and wires, shall keep thirty-five feet distance from the center line between the rails of the main track, as hereinbefore provided, but where there are obstructions in the way, plaintiff may erect its poles and lines at a less distance, but in no case nearer than fifteen feet from the center line between the rails of the main track, side-track, turn-outs or spurs where

the width and conditions and location of said side-tracks, switches, turn-outs, spurs, etc., will permit of going so far. It is further ordered that where the plaintiff's lines cross the defendant's track, and where it is necessary to cross to prevent interference with any use or works of said railroad, plaintiff's poles shall be of sufficient height above the ground, and said wires shall be maintained by the plaintiff at a height of not less than twenty-five feet above the surface of the rails of said railway company, and a sufficient height above any structure or wires of said railway company, or of any telegraph company now located on its right of way, so as to not interfere in any manner with the same, that cross-arms may be ten feet long or five feet in either direction from the center of the pole, and shall be fastened high enough on said poles to not interfere in any manner with the operation of said railway company, and said poles shall be located so as to not obstruct or interfere with any ditch, drain or culvert, bridge or other structure of defendant railway company; it is ordered that the line of said plaintiff is to run on the western side of said railroad bed in the manner as stated in the foregoing agreement and findings of the court unless it shall be found necessary to cross said railroad bed, in order not to interfere with the operations of said railroad.

"It is further ordered by the court that the defendant railway company shall have the right to remove all dirt, gravel, sand and stone from the right of way of plaintiff that may be needed in improving its track or roadbed and for other necessary purposes upon reasonable notice, and the plaintiff shall have the right of ingress and egress to and from its poles and lines at all times for the purpose of repairing its lines and keeping the same in repair in mode and manner as is commonly done in such cases, but in no respect to in-

terfere with the operation of the defendant railway company.

"It is further ordered, and adjudged that the plaintiff shall hold the defendant railway company harmless for any damages to the poles, wires, cross-arms and other appurtenances occasioned by fire set or occurring upon such right of way occasioned by the burning of grass or undergrowth upon said railroad right of way, as required by the laws of the State of Missouri; and it is further ordered and adjudged by the court that wherever the wires of the plaintiff company shall cross the right of way and tracks or spur tracks of the defendant, the said wires shall be maintained at a height of not less than twenty-five feet above the surface of the rail of said railway and that the plaintiff shall, upon reasonable notice and at its own expense, move its poles and wires to any other portion of the right of way of the defendant adjacent thereunto, and designated by defendant whenever the said defendant shall need the said right of way, occupied by the plaintiff, for the erection or building of tracks, water tanks, depots and other structures. It is further considered, ordered and adjudged that upon the payment of the said sum as aforesaid, the easement or right of way, as aforesaid, shall vest in the plaintiff, but not until said sum has been paid."

The facts the evidence tended to prove will be hereafter referred to.

I.  Defendant owns a strip of land 100 feet wide from Poplar Bluff south to Arkansas—whether in fee, or whether its estate is a right of way or easement acquired by condemnation proceedings, leaving the fee in the adjoining proprietors as provided by section 21 of the Bill of Rights, does not appear. Presumably defendant's estate is an easement or a right of way for railroad purposes, and such is the theory of the case. In the center of this right of way is laid its main track. On one side of it are the poles and lines

of the Western Union Telegraph Company—there by defendant's consent. It is on the opposite side (across the way) that plaintiff, as a new-comer, seeks to become a neighbor of this twain of friendly corporations, and to that end seeks to condemn an easment in an easement.

Corporations, under our Constitution, hold their property under the same guaranty of inviolability that individuals do—no greater, no less. As the individual holds his property subject to the right of eminent domain (sec. 21, art. 2, Const.), so does the corporation. [Sec. 4, art. 12, Const.] Indeed, if these artificial children of the State are accorded equal property rights with natural person (i. e., children of flesh and blood, bodies and souls), it is all they should ask. The right of eminent domain, says VALLIANT, J., "is a sovereign power to be used only by the sovereign or by one on whom the sovereign has conferred it for a particular use." [Southwest Missouri Light Co. v. Scheurich, 174 Mo. l. c. 241.] At the door of the case, then, is the question whether the State has delegated to corporations of the class of plaintiff the right of eminent domain; and lying there also is the subsidiary question whether plaintiff has been delegated the express power to invoke the condemnation of an easement over the property of railroad corporations. Both these questions must be answered in favor of plaintiff; since by article 6 of chapter 12, Revised Statutes 1899, relating to telegraph and telephone companies, it is provided (sec. 1252): "Such companies are also authorized to enter upon any land, whether owned by private persons in fee or in any less estate, or by any corporation, whether acquired by purchase or by virtue of any provision in the charter of such corporation, for the purpose of making preliminary surveys and examinations with a view to the erection of any telephone or telegraph lines, and, from time to time, to appropriate so much of said lands as

may be necessary to erect such poles, piers, abutments, wires and other necessary fixtures for a telephone or magnetic telegraph, and to make such changes of location of any part of said lines as may, from time to time, be deemed necessary, and shall have a right of access to construct said line, and when erected, from time to time, as may be required, to repair the same; and may proceed to obtain the right of way, and to condemn said lands in the manner provided by law."

The next article of the same chapter, relating to condemnation proceedings, is somewhat of a code unto itself, and comprises the statutory method for the appropriation and valuation of lands taken for telegraph, telephone, gravel and plank road or railroad purposes. In that article, section 1272, Revised Statutes 1899, reads as follows: "In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad, telephone or telegraph company shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lines. Where no agreement can be made between the parties, the mode of assessing the damages provided heretofore, as to private persons, shall be adopted; and if the lands to be appropriated lie in more than one county, an application may be made in any one county in which any of the lands lie, and the damages shall be assessed as to all the lands of the defendant corporation along the whole line, in one proceeding."

Construing a statute of the State of Texas, similar in terms with section 1252, *supra,* the Supreme Court of that State held, in Railroad v. Southwestern Telegraph & Telephone Co., 60 L. R. A. 145, that such statute gave express power to a telegraph and telephone company to condemn an easement along the right of way of a railroad to erect and maintain poles and wires. Construing sections 1252 and 1272, *supra,*

together it seems beyond question that telegraph and telephone companies are expressly given power to condemn and appropriate an easement to erect and maintain their poles and wires on the rights of way of railroads — the right to appropriate, however, being rigidly limited to such use as shall not materially interfere with the uses the corporation holding the property is authorized to put it, or does put it, by law; and this is clearly within the reasoning of Railroad v. Hannibal Union Depot Co., 125 Mo. 82.

Going one step more: Who is to determine the necessity, expediency and propriety of exercising this delegated right of eminent domain? Is it the courts, or the donee of this power? It has been held that with the express grant of power to exercise the right of eminent domain there necessarily went the right to determine the foregoing questions, they being essentially political and not judicial. [Simpson v. Kansas City, 111 Mo. 1. c. 242; State ex rel. v. Engelmann, 106 Mo. 1. c. 632.] Speaking to this point the Supreme Court of Colorado said in Railroad v. Postal Tel. Cable Co., 30 Colo. 1. c. 142: "The discretion which the corporation may exercise in determining the route of its lines cannot be interfered with in the absence of a showing of bad faith, a malicious motive, or that the taking of a particular tract sought to be condemned would entail a great loss which might readily be avoided." [In re Railroad v. Kip, 46 N. Y. 546; Railroad v. Hooper, 76 Cal. 404; Railroad v. Wiltse, 116 Ill. 449; Railroad v. Dunbar, 100 Ill. 110.] "There was [continued that learned court] no showing of this character on the part of respondent. True, it did introduce evidence to the effect that the erection of a telegraph line along its right of way would cause some inconvenience, and might possibly increase the hazard of railroading, but in no greater degree in this particular instance than other railroads must suffer from the erection of telegraph lines adjacent to their rail-

road tracks—a condition which exists almost without exception along every line of railroad in the United States." [See, also, Tel. Cable Co. v. Railroad, 23 Utah l. c. 485, et seq., and cases cited.]

In its exceptions, objections and protests filed below, defendant sought to inject into the hearing issues relating to the good taste, the expediency and propriety of plaintiff intruding itself on defendant's right of way instead of buying or condemning a right of way over other lands, or using the public roads as it had the right to do under Revised Statutes 1899, section 1251. [Laws 1903, p. 137.] But, plainly, such issues are extraneous to the case. Defendant may no more question the policy, the good taste and propriety of plaintiff's selection of that route for its poles and lines than could the original proprietors raise such issue with defendant when it selected the route for its railroad. When the Legislature delegated to defendant the power of exercising the right of eminent domain in its own behalf, it granted to it by necessary implication (barring malice and fraud) the discretion of selecting its route; and when it granted to plaintiff the same right, it clothed that right with the same attribute of discretion—provided always that when an easement for a public use is to be condemned in an existing easement for a public use, the new easement (not being superior to the former) ought not to destroy, or be materially detrimental to the prior use. For, as Coke says: "Priority in time gives preference in law." [4 Coke, 90 a.] And so runs the legal maxim: *Qui prior est tempore potior est jure;* and the equitable rule: The elder equity is the better.

II. It is insisted by defendant's counsel that, not only on general principles of right, but by express statute, plaintiff could not condemn a secondary easement for a public use which destroyed or materially interfered with the public use of the first easement. This is so, at least where the second easement is not a

public use superior to the first. [Pennsylvania Railroad Co.'s Appeal, 93 Pa. St. 150; Pittsburg J. R. Co.'s Appeal, 122 Pa. St. 511; Railroad v. Railroad, 124 Mass. 368; N. W. Tel. Ex. Co. v. Railroad, 76 Minn. 334; Railroad v. Railroad, 111 Cal. 221; Railroad v. Depot Co., 125 Mo. 82; R. S. 1899, sec. 1272.]

Based on the foregoing proposition, defendant's counsel argue that having raised the issue below that plaintiff's proposed easement would materially and detrimentally interfere with the public use of running trains and transporting passengers and freight on its right of way as a common carrier (incumbent on defendant); and having introduced testimony which tended (they argue) to sustain that issue, defendant was entitled to a finding and judgment determining the issue. It is argued there was no determination of the issue, hence, the judgment must be reversed. Is there substance in this contention? Let us see about that. No private property can be taken for private use without the consent of the owner except for private ways of necessity and for drains and ditches, for agricultural and sanitary purposes, *etc.* [Sec. 20, art. 2, Const.] That section further provides that when an attempt is made to take property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question and, as such, judicially determined.

Our object in referring to the foregoing provision of the Constitution is not to consider the question of public use as such. That question is not here; for the case is presented to us substantially on the theory that to condemn property for the use of a telephone and telegraph company, whose business is the communication of intelligence from one part of the country to another, is to take it for a use that is public. It has so been held by this court. [State ex rel. Subway Co. v. St. Louis, 145 Mo. l. c. 576.] And such is the general doctrine of the books.

Our purpose is this: Defendant's counsel concede the question raised by them, as aforesaid, is a "*judicial* question." Accepting that theory, *i. e.*, allowing the case to proceed on the assumption the question in hand is a judicial question, to be judicially determined, then (and in the first place) it follows as a truism that being a judicial question it ought not to be submitted to the jury to be tried out as a question of fact. It has so been held where the issue was: Is the use a public one? [City of Savannah v. Hancock, 91 Mo. 54; Railroad v. Railroad, 94 Mo. 535.]

We conclude, therefore, that defendant's instruction number 3, whereby the judicial question up for exposition was left to the determination of the jury, was properly refused — that was not the right way to determine a judicial question. The statutory procedure in condemnation cases is not as full and as plain as it might be. Courts have felt their way along and, as cases arose, have guardedly established a working theory for the statute with some difficulty and hesitation. But however obscure any matter may be, it is not clear from anything decided hitherto that the judge on the bench and the jury in the box may, with any profit to jurisprudence, swap places in condemnation cases, so that the jury becomes a judge of the law.

In the next place, by parity of reasoning, we may get at a solution of the problem in hand by attending to the method tolerated for showing the determination of the aforesaid kindred judicial question, viz.: what is a public use? In State ex rel. v. Engelmann, 106 Mo. l. c. 632, MACFARLANE, J., says: "The judicial question for the determination of the recorder, under section 20, article 2 of the Constitution was, whether the land proposed to be taken under the power of eminent domain was to be applied to a public use. This fact can, in general, be determined by the court before which the proceeding is commenced, from an inspec-

tion of the petition, or other pleading by which it is instituted." Referring to City of Savannah v. Hancock, 91 Mo. 54, and City of Kansas v. Baird, 98 Mo. 218, MACFARLANE, J., continued: "In the former of these cases, it is said, 'that the use is a public one, is manifest on the face of the record.' And in the latter case it is said: 'From this record there can be no doubt but this is a proceeding to widen and extend one of the public highways of the City of Kansas, and the use to which the city seeks to put the property is a public, not a private one. . . . . The whole record shows that the use is a public one, and that is sufficient.' "

We are not pointed to any statute or rule of practice requiring a trial court to spread of record in its final judgment its ruling on every judicial question raised. Under the doctrine of State ex rel. v. Engelmann, *supra,* and the authorities cited by MACFARLANE, J., we may look to the entire record for the determination of judicial questions of the character being considered. In this view of the matter, conceding, under the doctrine of Railroad v. Railroad, 94 Mo. 535, that ordinarily evidence was not necessary in order that the court might determine the judicial question we are now considering, conceding that under some circumstances evidence would be necessary, as said by BLACK, J., in that case—yet, if it further appear on the face of the entire record before us that in the first instance, the judicial question was determined (and determined properly) against defendant by the judge on the inspection of the petition, and if it further appear on the entire record that when evidence was introduced, the same judicial question was again properly determined against defendant by the court, then it would seem defendant has no cause of complaint. Now, in this case, the record shows that on the inspection of the petition and the reasons and answer of defendant "the reasons and answers aforesaid were disre-

garded and overruled by said judge.'' The record further shows that defendant objected and excepted to the action of the judge in overruling said reasons and answers. The construction we give to the foregoing part of the record is that the judge considered the petition and answer and in so far as the answer might be considered a demurrer, he overruled the latter. We are emboldened to take this view of the matter because defendant has done so, and has put its own construction on it in its bill of exceptions. Defendant, then, at the outset under this record, had a judicial determination of the judicial question on the inspection of the pleadings. Did the court err in such judicial determination? We think not. The petition shows the Western Union Telegraph Company has a line of poles and wires along one side of defendant's right of way. The easement plaintiff sought to condemn is a corresponding right, as said, on the other side of the way. Not only so, but a condition of things is shown by the petition, in the proposed distance of plaintiff's poles from defendant's track, in size of poles, in guys, braces, cross-arms, pins, wires and insulators, and in reservations to defendant of the right to change the grade, to take all dirt, gravel, stone, water and other material, to have the part occupied by plaintiff's poles remain unfenced, *etc.*, from which it is not apparent, as a matter of law, that the public use in defendant's easement will be destroyed or materially interfered with by plaintiff's use.

Furthermore, defendant was allowed to introduce evidence tending to show danger to trains and its railroading operations from the presence of poles and wires along the right of way, arising from storms of wind and sleet. There was some evidence, too, that if defendant installed the block system on its road, the presence of telegraph poles at curves might interfere with the observation by its engineers and other trainmen of the signals pertaining to said system. In this

condition of the proof, at the close of the case, defend-
ant asked an instruction in the nature of a demurrer.
This demurrer challenged the sufficiency of the evi-
dence to make a case entitling plaintiff, in the light of
all the circumstances, to condemn an easement in de-
fendant's easement. By overruling that demurrer, de-
fendant, in logical effect, had the benefit of another ju-
dicial determination of the very question in hand, and
we think, too, the court did right in its ruling on that
demurrer. The value of defendant's testimony and
theory is weighted down by at least one self-evident
proposition, viz.: the danger insisted on must be un-
substantial, remote and problematical, or defendant
would not allow the presence of the poles and wires of
the Western Union Telegraph Company on its right
of way as close to its track on the one side as plain-
tiff asks to put its poles and wires on the other; and it
stands to reason that if there are (as we assume) no
real and substantial dangers to trains, trainmen, trav-
elers and shippers from the presence of one line of
wires and poles on one side of the track (*i. e.,* the West-
ern Union side), there can be no such dangers from a
line of wires and poles on both sides of, equi-distant
from, the track, where (as here) the right of way on
the side to be impressed by the proposed easement is
vacant territory.

It is a matter of common observation that tele-
graph poles and wires have become usual incidents on
railroad rights of way—always on one side, and fre-
quently on both. And the contentions of defendant
now in hand have been uniformly disallowed, as ap-
pears from cases collated by plaintiff's industrious
counsel. See, for example: Railroad v. S. W. T. & T.
Co., 60 L. R. A. 151; Telegraph Co. v. Railroad, 30
Ind. App. 654; Railroad v. Postal Tel. Co., 173 Ill.
508; Railroad v. Tel. Co., 121 Fed. 285; Railroad v.
Tel. Co., 30 Colo. 133; Postal Tel. Co. v. Railroad, 23
Utah l. c. 485, *et seq.,* and cases cited; Railroad v.

Postal Tel. Co., 120 Ala. 21; Railroad v. Postal Tel. Co., 120 Ga. 268.

III. It is next contended by defendant's counsel that the easement proposed to be acquired is so lacking in precision and definiteness as to render the proceeding void. They argue that the property to be appropriated must be definitely located and described in the petition and judgment. They say this requirement was disregarded in the case at bar. Is this so? We think not. It will be seen that the property to be appropriated is described as located with reference to defendant's main track. The description starts with that track as a fixed monument. Then the poles and wires are to occupy the side of defendant's right of way opposite to the poles and lines of the Western Union. The *termini* are given, viz., the State line and Poplar Bluff. The size of the poles and cross-arms is set out; the height of the poles and cross-arms above ground is set out; the approximate distance of the poles from the track is set down, the depth the poles are to be put into the ground is set out; and the guys, braces, *etc.*, are referred to in such language and with such limitations as would practically convey definite information to any intelligent person versed in constructing telephone and telegraph lines. And while the exact position of each individual pole is somewhat left to be adjusted by a rule announced in the petition and judgment, yet the location is as definite as the subject-matter will permit; that is certain in a description which can be made so by calls; and the form of the petition and judgment here has been critically examined by appellate courts in other jurisdictions, and has met the approval of judicial determination after analysis. [See authorities, *supra.*]

It has been well determined in the cases referred to that reservations, stipulations, promises and limitations made and placed, as in this case, on the easement by the petition and the judgment may be likened

to covenants running with land, and in such case as this run with the easement and are binding upon plaintiff company and its successors. [Railroad v. S. W. Tel. & Tel. Co., 121 Fed. 276; Railroad v. Postal Tel. Co., 173 Ill. 1. c. 535, and cases cited; Railroad v. Post. Tel. Cab. Co., 76 Miss. 1. c. 752, *et seq.*]

The statutory rule in section 1272, *supra,* limiting the right under the second appropriation to such use as shall not materially interfere with the uses impressed on the primary easement by law seems to demand a flexibility in the petition and judgment which will subserve the useful purpose constituting the life of that statute; and the lack of definiteness complained of by defendant is really but another name for this flexibility. If hereafter defendant is obliged by law or by an advance in the knowledge of railroading to install the block system or any other contrivance or mechanism on its line as a protection to life and property, the judgment should be so worded as to prevent the poles and wires of plaintiff from interfering with the use of such safety appliances in the future; and as the case will have to be reversed and remanded because of error to be pointed out further on, another judgment, if one be rendered, can be so worded as to leave no doubt on this point.

IV. Defendant's counsel complain, and we think with great reason, of the rule announced, *nisi,* for the measurement of damages. Defendant's instruction number 2 on that score does not lay down any rule heretofore approved in any case brought to our attention. It seems vague and argumentative and as likely to confuse, rather than enlighten, a jury. Therefore, its refusal was well enough. But the court told the jury that defendant's damages were nominal; and this, under the evidence, was bad. The meaning of that instruction was that defendant was entitled to damages in name, merely, and it stamped defendant's rights with belittlement. It was the same as if the court had

told the jury that in condemning its easement plaintiff was merely guilty of a technical invasion of defendant's property rights, and not a whit more.

That plaintiff, moving in the orbit of a delegated sovereign right, for a public use, may condemn an easement in defendant's easement because of public policy, is one thing—to take away property rights under a judicial pronouncement that they are of no value, is quite a different thing. The public is by no means interested in plaintiff's taking defendant's property rights for nothing. The same public policy that allows plaintiff to intrude itself, *sub modo,* and by compulsion absorb some of defendant's property rights recognizes that plaintiff should make full recompense (*i. e., "just* compensation"), not only for the property taken, but for the damage ensuing, if any. Plaintiff's counsel argue, *ore tenus,* that defendant will be benefited by competition in the transmission of telegrams; but if this were so, why should plaintiff confer benefits of that ilk on defendant against its will? May A, *will ye, nill ye,* give B a bath because B (as A sees it) needs a bath? May C, without D's permission as a condition precedent, give D a physic because D (as C sees it) needs a physic? Such meddlesome theories mischievously disturb the social compact and are of questionable value in law. Nor will it do to say that because the elements entering into the value of the property appropriated by plaintiff's poles and into defendant's damages are complex and difficult of formulation or ascertainment, therefore, the law averts its face and will give no damages except in name.

Defendant introduced evidence tending to show that its right of way from Poplar Bluff south to the State line ran through a low country, wet in places, and, as we understand it, had been heavily timbered and had been prepared by defendant for railroad purposes at heavy expense by being cleared off. It was fenced, but whether it was necessary to ditch the same

to make it usable we cannot tell. The testimony does not satisfactorily deal with the question of the expense, if any, in keeping the right of way grubbed off and free from sprouts and like impediments. The testimony does show that it would not be practicable to have more than one line of poles, with their appurtenant aerial cross-arms and wires, on any one side of the main track. As said, the Western Union Telegraph Company now occupies one side of the right of way. If plaintiff is allowed to occupy the other and put its poles at such distance from the track as to not endanger railroading and such a distance from the edge of the right of way as to reduce to a minimum its own danger from falling trees and limbs off the right of way, then it will occupy the only remaining position on defendant's right of way, now unoccupied, and suitable for a telegraph and telephone line. In this condition of the proof it results that, given plaintiff's easement, then the right of defendant (if of any value) to construct another telegraph and telephone line is gone. If we assume that defendant has no need for another line and would not build it, shall we also assume that the place plaintiff proposes to occupy has no rental or permit value—that defendant could not rent such privilege to another telegraph company in connection with its railroad business? It was in evidence that defendant rented a corresponding privilege, under some running arrangement, to the Western Union at a substantial remuneration. We must not be understood as holding that the terms of this contract are admissible in evidence as tending to show the rental value on the other side of the right of way. The terms of that contract were complex and singular, involving a swapping of services and accounts and tending (it is said) to create a monopoly. They throw no light on the issue here further than the mere fact of the existence of a renting contract tended to show there was somewhat of a market for such privilege. Sup-

pose defendant repent of its sin of granting a monopoly to the Western Union and determines to sin no more, shall it be debarred the right to permit another line? That a railroad company, as long as it does not disarm itself of the power to live up to its duties as a public service corporation, may build and maintain or may rent a permit to build and maintain a telegraph line on each side of its right of way, ought not to be doubted—such use being an adjunct of railroading. This right is a property right, and under the evidence here we cannot say it was of value only in name.

To get at defendant's damage it is proper to put the whole environment before the jury and adopt the same common sense methods employed by private individuals under similar circumstances. [Railroad v. Continental Brick Co., 198 Mo. 698.] Take this case: Here is a right of way that has been cleared through heavily timbered lowlands; it is to be kept fenced and free from inflammable matter. Plaintiff condemns the right of access to this right of way thus prepared ready to its hand. It condemns a right to erect its poles and wires, and the further right to go on the premises and keep them in repair. By getting upon defendant's right of way it measurably escapes danger from falling timber. We know it has been held in some cases that a defendant is not entitled to remuneration because of such favored surroundings. The argument runs that defendant having to do all these things before plaintiff came, will have to continue to do them after plaintiff's advent, hence, plaintiff is not called on to bear any part of such burden, or pay anything because of such favored conditions. But there is a false note to a proposition that announces that A is damaged no more by B sleeping by A's fireside and under his roof (A being obliged to keep a blaze going and a tight roof for his own family) than if B had pitched his tent on outlands belonging to A and lying in a state of nature; and such proposition has been deemed unsound in ably-

considered cases. In Railroad v. Ohio Postal Tel. Cable Co., 68 Oh. St. l. c. 325, it was said:

"Our General Assembly has imposed on railroad companies certain duties in caring for and maintaining their rights of way, so that the public, and especially adjoining landowners, may not suffer from fires which start on railroad premises. Other restrictions are placed upon the use and condition of the right of way. Whatever these imposed obligations may be, we think they may be properly taken into account, inasmuch as the telegraph company does not assume them, nor are they imposed upon it by reason of its joint occupancy of a part of the right of way. It seems quite reasonable that, when a telegraph company, by virtue of the statute, condemns to its use a part of the premises of one of the trunk line railroads of the country for the distance appearing in this case, more than mere nominal damages or compensation may be involved. From the best light we have upon the law applicable to this case, we believe the measure of compensation should be the amount which the right of way of the railroad company for railroad purposes, is diminished in value by the proposed easement of the telegraph company; or, in other words, the amount of the decrease in the value of the use of such right of way, for railroad purposes, which will be caused by the appropriation of an easement on the same for the purpose of erecting and maintaining a telegraph line thereon."

In Postal Tel. Co. v. Morgan's L. & Tex. R. & Steamship Co., 49 La. Ann. 58, it was said: "This inconvenience [the inconvenience to defendant] is an element, however, to go into the general estimate. The lands may, along defendant's right of way, be of peculiar or particular value for specific purposes, but we do not understand that they are now devoted to these purposes. The plaintiff must, however, make compensation proportionately for the cost and ex-

202 Sup—44

pense of defendant in putting in condition the right of way. It cannot avail itself of improved conditions without compensation.''

In Postal Tel. Co. v. Railroad, 49 La. Ann. 1270, the following syllabus fairly presents the gist of the decision: ''In determining what is a fair compensation for the use and occupation of the land sought to be expropriated, the improved condition of the land is a proper element to be considered. The defendants are not entitled to recover the original cost of the improvements, but are entitled to reasonable remuneration in view of the same.''

In Railroad v. Railroad, 51 La. Ann. 1605, the same principle is announced; and the reasoning of the Supreme Court of Illinois in Railroad v. Postal Tel. Co., 173 Ill. l. c. 536, et seq., is in accordance with the doctrine promulgated in the above cases.

We think these cases announce a just and reasonable rule, and one likely to result in a defendant getting the ''just compensation'' provided for by section 21, article 2, of the Constitution.

There being error in plaintiff's instruction, the judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion.

All concur.