**MAPCO, INC., a corporation, Plaintiff-Appellant,**

v.

**Kathleen WILLIAMS et al., Defendants-Respondents.**

**No. KCD 29763.**

Missouri Court of Appeals, Western District.

April 2, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 1979.

Application to Transfer Denied June 19, 1979.

Michael H. Maher, Kansas City (Swanson, Midgley, Gangwere, Thurlo, Kansas City, of counsel), for plaintiff-appellant.

Roger Guy Burnett, Liberty, Tom J. Helms, Kansas City, for defendants-respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Mapco, Inc. initiated this litigation in January, 1977, by its petition to condemn a fifty foot easement on defendants' land upon which Mapco had already implanted its pipelines in the summer of 1976. The landowner defendants answered to the condemnation petition and counterclaimed for ejectment. The trial court held a hearing on Mapco's petition, following which defendants filed a motion to dismiss Mapco's cause of action. The trial court sustained that motion and ordered the ruling be final for purposes of appeal. This appeal by Mapco promptly followed.

The major operative facts are not in dispute. In 1974, preparatory to construction of the proposed Smithville Reservoir and Dam by the United States Corps of Engineers, the Corps and Mapco entered into discussions relative to the relocation of an eight inch and a ten inch pipeline already in place on a private easement owned by Mapco. The purpose of the relocation would be to accommodate the proposed lake which would be created by the dam. In the course of those discussions, which were conducted on behalf of Mapco by its Chief Pipeline Engineer Leiber, the Corps produced a map identified in evidence as Exhibit No. 4. Mapco eventually acceded to a relocation route desired by the Corps which was marked upon Exhibit No. 4. Exhibit No. 4 also showed the boundaries of existing right of way owned by the Corps, and the route of the agreed relocation of the Mapco two pipelines was shown to be entirely within the Corps' existing right of way without intruding upon any neighboring private property.

In 1975, Mr. Leith B. Watkins came to work for Mapco as an Engineer and succeeded to the primary duties of carrying out the relocation project. During 1975, he had occasion to use Exhibit No. 4 for the purpose of preparing certain cost estimates. However, as the project neared the signing of a contract and actual performance of the work, Watkins requested additional topographic maps of the area and the Corps did furnish such maps to Watkins, one of which was identified in evidence as Exhibit No. 7. From that point on, Watkins proceeded to work with Exhibit No. 7 for survey purposes in the laying out of the route to be staked by the surveyors on the ground. Unfortunately, Exhibit No. 7 did not as furnished by the Corps reflect the boundary of the Corps' existing right of way, and Watkins through error laid out a route for the pipeline relocation which encroached 580 feet on defendants' land. Watkins submitted to the Corps an "alignment sheet" which showed the exact relocation route as prepared by him and which was attached to the construction specifications. Apparently the alignment sheet was not objected to nor called to Watkins' attention for correction.

A contract covering the relocation work was executed by the Corps and Mapco on April 1, 1976. Mapco was to be reimbursed for expenses in the sum of $830,000, none of which was for the purpose of acquiring any additional right of way. The route of the relocated line was designated on Exhibit C attached to the contract, and it was the same as that on Exhibit No. 4 in that the route indicated passed south of and did not touch defendants' property.

Watkins testified that he at all times intended to relocate the pipelines entirely on government property and that he was unaware during the preparation of Exhibit No. 7 and the doing of the actual work that the relocation would go outside the Corps' existing right of way. He also testified that if he had been aware that the final relocation route passed onto private property, he would have modified the route so as to avoid that result.[1] Mapco first became

1. Watkins also attempted to justify the route actually selected on the grounds that it would get further away from the high water level on certain fingers of the lake for safety purposes; was selected so as to avoid a barn, house and pond through which the route depicted on Exhibit No. 4 passed; also to reduce a severe angle and make the route of the pipeline as straight as possible; and also to afford easier access to the valves by setting them closer to the road. The trial court did not accept this part of Watkins' testimony, finding as follows: "The court does not believe the testimony of Leith Watkins justifying an alternate location

aware that the final relocation route was on defendants' property only after the relocation project had already become completed. At that point, in response to a demand by defendants' attorney that the pipelines be removed from defendants' land, Mapco offered to purchase a fifty foot easement for $3,000. Defendants rejected that offer, but stated they were willing to sell for $25,000. Mapco found the counteroffer unacceptable and instead filed this suit for condemnation under Section 523.010, RSMo 1969.

■ As with respect to the basic facts outlined above, so also the parties agree as to the following basic legal principles which serve to mark out and limit the battleground of this litigation: (1) The questions of whether the taking of any given private property is "necessary" for the condemnor's purpose and the extent and exact location of the property to be taken are matters for political or legislative determination which have been delegated to the condemning authority by virtue of the statute granting the right of eminent domain. *Kansas & T. Coal Ry. Co. v. Northwestern Coal & Mining Co.*, 161 Mo. 288, 61 S.W. 684 (banc 1901); *American Tel. & Tel. Co. v. St. Louis, I. M. & S. Ry. Co.*, 202 Mo. 656, 101 S.W. 576 (1907); *State ex rel. State Highway Commission v. Curtis*, 359 Mo. 402, 222 S.W.2d 64 (Mo. banc 1949); *State ex rel. Coffman v. Crain*, 308 S.W.2d 451 (Mo.App. 1958).[2] (2) The courts may inquire into those questions relating to "necessity" only if the protesting landowner alleges and proves that the condemnor's claim of necessity constitutes fraud, bad faith or an arbitrary and unwarranted abuse of discretion. *State ex rel. State Highway Commission v. Curtis, supra; State ex rel. Coffman v. Crain, supra; Phillips Pipe Line Co. v. Brandstetter*, 241 Mo.App. 1138, 263 S.W.2d 880 (1954).

■ It is with respect to the application of the second rule just stated to the facts of this case that the parties part company. Defendants insist that Mapco could have relocated the pipeline solely on government land, that the contract for relocation so contemplated, that Mapco itself so intended, and that its failure to do so must be considered an abuse of discretion. The trial court so concluded, stating: "Under the facts as stated above, plaintiff's unlawful action in relocating its pipelines on defendants' land instead of on government ground constitutes an unwarranted abuse of discretion in its determination of necessity to acquire an easement from defendants. * * Any claim by plaintiff that present necessity now exists as a result of its mistake in relocation is disallowed as being in bad faith in light of the above-stated facts."

Those conclusions by the trial court cannot stand in light of the facts that the relocation had already been completed at the time the petition for condemnation was filed, that the improvement is one of a permanent nature, and that it is devoted to a public purpose. Under these circumstances, Mapco must be permitted to acquire the necessary rights to preserve the improvement in question even though the installation was originally accomplished by virtue of a trespass.

■ The governing principle is ruled by *Harris v. L. P. and H. Construction Co.*, 441 S.W.2d 377 (Mo.App.1969). In that case a telephone utility entered upon plaintiffs' land without legal authority, cut down trees and erected telephone lines. The plaintiff landowners brought suit in two counts, the first of which sought statutory damages for trespass and the second prayed ejectment and damages. The defendant utility assert-

for plaintiff's pipelines in order to miss a dwelling house and a farm pond because he also testified that there was another suitable route on government land which plaintiff would have used had it known it would be trespassing on private property."

**2.** This general rule has a corollary (not admitted by defendants in their argument) that the condemnor has discretion to take private land of another even though there may be public land or the condemnor's own land all ready and otherwise available. *Kansas & T. Coal Ry. Co. v. Northwestern Coal & Mining Co., supra;* Nichols on Eminent Domain, Section 4.11[3], 4–196.

ed an "affirmative defense" requesting condemnation of a easement over plaintiffs' land. Although the court held that the "affirmative defense" could not excuse the trespass, the opinion does expressly recognize that the circumstances gave the defendant utility a privilege to acquire a right in the land so as to preserve the utility improvements, stating at l. c. 381:

"The trespasser, having no right to remain on the land, is required to cease his trespass and until he does so is liable for damages on a continuing basis. If the trespasser is, however, a public utility an additional factor enters the picture, the welfare of the public. In that case if the trespassing structure is permanent, and if it is needed to serve the public or some portion thereof, then the landowner loses the right to force the removal of the structure and is entitled and required to recover his damages, past, present and future for the appropriation, in one action (but not necessarily in one count). Upon payment of those damages, the public utility acquires an easement for the continued maintenance of the structure.  *   *   * "

Applying this principle, the court went on to hold that the utility had a good defense to the action in ejectment, stating at l. c. 383:

"Defendants have by their answers raised affirmative defenses of estoppel and of a permanent structure for public use. Either defense, if established by the evidence would serve to defeat plaintiffs' recovery under Count II. Ejectment is an action for possession and damages can be recovered in such cause of action only if plaintiff is entitled to possession. Sec. 524.080, Sec. 524.110. Such cause of action is defeated, regardless of the ownership of the real estate, if plaintiffs do not have at the time the action is commenced, a right to possession. Estoppel may defeat such right of possession.  *   *   * And in the case of a public utility, where the interests of the public are involved, *proof* of a permanent structure for a public purpose would defeat plaintiffs' possessory action. *Luttrell v. State High-*

*way Commission,* Mo.App., 379 S.W.2d 137." (References to footnotes omitted.)

Defendants here attempt to ridicule the above defense by hypothesizing a situation in which a utility might deliberately and with actual malice seize private property, build an improvement thereon, and then resist any relief to the landowners by hiding behind the defense recognized in *Harris.* We need not and decline to announce any advisory opinion at this time covering the situation hypothesized. That is not this case. Here Mapco by exercising greater diligence could have relocated its pipelines without any necessity for going onto defendants' land, and its failure to do so unquestionably constituted negligence. However, that is a far cry from a showing of deliberate malevolence. It may well be that if defendants had shown that Mapco's original entry on defendants' land was actuated by spite, ill-will or fraud (or perhaps even if defendants had only shown that Mapco had conscious knowledge that it was trespassing when it made entry on defendants' land for the relocation), then Mapco might be deprived of its special defense in question. But defendants have made no such showing here.

■ Nor does application of the above doctrine, although permitting Mapco to proceed with condemnation and depriving defendants of any right to ejectment, leave defendants without recourse for Mapco's original unlawful entry. Contrary to defendants' statement in its brief, application of this doctrine will not give Mapco "complete insulation from and absolution from all of its sins." Defendants will still have a right of action against Mapco for that trespass, including a claim for punitive damages. *Beetschen v. Shell Pipe Line Corporation,* 363 Mo. 751, 253 S.W.2d 785 (1952). The condemnation action commenced in 1977, cannot operate by relation back to wipe out the wrongful trespass which occurred in 1976. As stated in the *Harris* opinion at l. c. 384: "No authority exists under the condemnation statutes for the assessment of past damage resulting from

defendants' trespass. In short, the proceeding by way of condemnation cannot relieve defendants from liability for the damages resulting to the plaintiffs from the prior trespassing." The court of appeals in the *Harris* case went on to suggest that "[i]n view of what has been said here, and the evidence previously adduced at the condemnation proceedings, plaintiffs may desire to proceed for damages in lieu of ejectment and damages now sought in Count II. If so, leave to amend should be given by the trial court." Similarly here, defendants may desire to amend their pleadings upon remand so as to seek damages in lieu of ejectment; and if so, leave should be granted.

Reversed and remanded for further proceedings.

All concur.