**MISSOURI PUBLIC SERVICE COMPANY, Appellant,**

v.

**H & W INVESTMENT CO., INC., et al., Respondents.**

**No. WD 31115.**

Missouri Court of Appeals, Western District.

July 8, 1980.

Edgar S. Carroll, Warrensburg, Judith P. Rea, Kansas City, for appellant.

Rice & Romines, James B. Rice, Jr., Sedalia, for respondents.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

In this condemnation proceedings, the trial court dismissed appellant's petition, after hearing some evidence, upon the ground that it had failed to prove a need for the lands sought to be condemned. The sole issue presented is the propriety of the trial court's action.

By paragraph 7 of its petition, appellant pleaded "that it intends and needs to construct, operate and maintain electrical transmission and distribution lines extending from (its) Knob Noster Substation (presently being constructed) thence in a Southerly direction to tie into (its) existing 69 KV transmission line, all in Johnson County, Missouri (more definitely set out in an attached map), for the purpose of more adequately serving present and future customers of plaintiff, a public utility." In paragraph 9, appellant pleaded that for the purpose of constructing, etc., the lines, it needs to acquire, and here seeks to acquire by condemnation an easement along and across the described lands.

Respondents, Chester E. Franklin and Lola M. Franklin, filed a motion to dismiss the petition upon the grounds, among others, that appellant had failed to allege jurisdictional facts and failed to state a cause of action in condemnation, that it had failed to comply with § 523.010, et seq., RSMo 1969, as amended, and that it had failed to negotiate in good faith.

After initial statements of positions upon the motion to dismiss, the trial court requested briefs and took the matter under advisement. Thereafter, it expressed a desire to hear the evidence before it ruled on the motion, and this evidence was adduced:

Dennis A. Seig, Director of Transmission for appellant, testified: There is a 69,000 volt line running on the south side of Knob Noster, and there is a substation north of it, which is a new one, and appellant has to get the electricity from the big transmission line to the substation, which will lower the voltage from 69,000 to about 12,000 to distribute to customers within Knob Noster to improve the service within the city by reason of the new line being better constructed than the older voltage line. The older voltage lines had been there about 15 years. What is planned is to replace some existing poles in some instances with taller ones which will allow the building of a transmission facility on top of the existing 12,000 volt line along the west edge of Highway J, replacing the old line. The poles would be

placed in the same right-of-way of Highway J, but with new arms resulting in transmission lines overhanging adjacent property, including the Franklins, by 15 feet. This is what is called an overhang easement, which is sought to be condemned. On cross-examination, Mr. Seig was asked why the existing 12,000 volt line could not be used for the purpose of the (new) 69,000 volt transmission lines, and his answer was that the construction does not match the standards and requirements made by the National Safety Code. The existing lines are not insulated for high voltage and they are too low. The higher voltage requires additional clearance in the horizontal direction by the National Electrical Safety Code to insure that people maintain adequate clearance from the lines, which is how (appellant) arrived at 15 feet. The existing easement cannot be used in compliance with the State and National Electrical Safety Codes because appellant will need the horizontal clearance that is prescribed by the National Electrical Safety Code, roughly 12 to 14 feet. These following proceedings were had: "THE COURT: * * Why can't this land be used, the one with the power line already there—why can't it be used? A. We don't have the horizontal clearances that are required. THE COURT: Well, what are the horizontal clearances? A. We are talking ten to twelve to fourteen feet. THE COURT: Do you know that for a fact? A. There is a formula that is developed from information within the Code that specifies, pardon me, the clearances that— THE COURT: You don't know the formula at this time, you are not prepared to say, is that what you are saying? A. No, I was— THE COURT: You don't know today? A. No, I don't remember. THE COURT: Do you have any better witnesses to offer? MR. CARROLL: No, sir. THE COURT: Do you want to renew your motion? MR. RICE: Yes, your honor. *COURT'S FINDING*: THE COURT: I will dismiss this action. MR. RICE: Thank you, Judge."

It is abundantly clear from the testimony of Mr. Seig that appellant proved that the additional easement was needed for safety reasons to convert the existing 12,000 volt line to one more than five times as great, 69,000 volts, to continue to serve the needs of Knob Noster, Missouri. But, aside from that, as respondents concede in their brief, the determination of need for the land to be condemned is vested in the sound discretion of the utility, and is not subject to judicial review, unless the protesting landowner alleges and proves that the utility's claim of necessity constitutes fraud, bad faith or an arbitrary or unwarranted abuse of discretion. That matter is controlled by *Mapco, Inc. v. Williams*, 581 S.W.2d 402, 405[1, 2] (Mo.App.1979), and cases cited, which hold that the question of whether the taking of any given private property is "necessary" and the extent and exact location of the property to be taken are matters of political or legislative determination which have been delegated to the condemning authority by virtue of the statute granting the right of eminent domain. [§ 523.010, RSMo 1969.] That case, and further cases cited, also hold that the landowner must plead and prove fraud, bad faith, or an arbitrary or unwarranted abuse of discretion of the condemnor in its claim of "necessity" in order that judicial inquiry may be invoked. No such pleading is in this case.

Respondents seem to relate their claim of lack of showing of necessity to condemn to their claim of appellant's failure to negotiate in good faith (before condemnation was begun), as required by § 523.010, but the latter issue was never presented to the trial court, but upon proper pleadings, that and other issues may be determined in further proceedings.

The judgment is reversed and the case is remanded for further proceedings.

All concur.